SARATOGA GENERAL TERM, March, 1849. *Paige, Willard, and Hand*, Justices.

## NEILSON *vs.* NEILSON.

One defendant in a judgment may become the purchaser, at a sheriff's sale, of the real estate of his co-defendant.

When the property of one judgment debtor is taken and sold to satisfy the judgment, such debtor has a remedy against his co-debtors for contribution.

In an action of ejectment, brought by a redeeming creditor, after a sale by the sheriff of real property, under an execution, the plaintiff is not bound to prove by extrinsic evidence, that the judgment debtor had no goods or chattels whereof the debt could be made.

Proof of the judgment, execution and sale, by the usual documentary evidence, followed up by the deed, is all that is required.

It *seems* the purchaser is not affected by the sheriff's return of the writ, or his failure to return it.

The remedy of the judgment debtor is against the sheriff if he sells real estate before personal property. The disregard by the sheriff of his duty in this respect cannot be used as a defence to an ejectment for the premises sold.

If a judgment is *satisfied* before sale, even a bona fide purchaser derives no title from the sale.

The sheriff may sell under an execution against several defendants who are tenants in common of the premises bound by the judgment, the right and title of all the defendants together; unless some one claiming to be the owner of some portion of the estate, or claiming to be entitled by law to redeem any portion, shall require such portion to be exposed for sale separately; in which latter case it must be sold separately.

Where the sheriff sells the right and title of several defendants to certain premises, and a mortgage creditor of one of the defendants redeems the right and title of such defendant, the deed of the sheriff to such redeeming creditor conveys only the right and title of the defendant which is thus redeemed.

EJECTMENT, tried at the Saratoga circuit, in June, 1848, before Justice HAND, when a verdict was taken for the plaintiff, subject to the opinion of the court, on a case. The facts appearing in evidence, and the points raised upon the trial, are sufficiently detailed in the opinion of the court.

*W. A. Beach & A. Bockes*, for the plaintiff.

*J. Ellsworth*, for the defendant.

Neilson *v.* Neilson.

*By the Court,* WILLARD, J. The plaintiff claimed title to the premises in question by virtue of a deed from the sheriff of the county of Saratoga, bearing date February 15, 1844, given to him as a mortgage and judgment creditor of Henry Neilson, redeeming the said premises. From the recitals in the deed and certificate of sale, the truth of which was established on the trial, it appeared that the sheriff, on the 12th of November, 1842, by virtue of two writs of fieri facias, issued out of the supreme court, against the property of Henry Neilson, (the now defendant,) Israel Post, jun., Abraham Post and Benjamin Badgley, sold the right and title of the defendants therein to the premises in question to Benjamin Badgley for $940, that being the highest sum bid for the same. It was shown that at the time of the docketing of the judgments under which those executions issued, and down to the day of trial, Henry Neilson was in the actual possession of the premises sold, occupying the same as one entire farm, and of the principal part of which, described in the case by metes and bounds, he was seised in fee, under a title derived from the last will and testament of his deceased father. From the record of judgment in both causes, it appeared that the judgment was in each cause obtained upon a joint promissory note, signed by all the defendants therein. The defendant's counsel objected to the certificate of sale and sheriff's deed, among other things, upon the ground that Badgley being a co-debtor with the defendant Neilson, could not become a purchaser of the real estate of Neilson under an execution against himself, Neilson, and the other parties to the suit; that his payment to the sheriff was an extinguishment of the judgment and not a purchase. The learned judge reserved this question, and it forms the first point to be considered in the cause.

It has been decided that at law the payment by one of several joint debtors, to the creditor, operates as an extinguishment of the judgment; and that the assignment of the judgment by the owner thereof to one of several defendants produces the same result. (*Ontario Bank* v. *Walker*, 1 *Hill,* 652. *The Bank of Salina* v. *Abbot and others,* 3 *Denio,* 181.) But it is

believed that this principle is inapplicable to the present case. Here was no assignment of the judgment by the creditor, nor payment by one of several defendants, in the legal sense of that term. If the payment by Badgley of his bid to the sheriff extinguished the judgment, and thus rendered the sale invalid, no sale by the sheriff can ever be upheld when the bid equals the amount of the judgment and is paid. The payment by any purchaser, at a sheriff's sale, who has bid to the amount of the judgment, operates as a discharge of the judgment. But it must be observed that the sale precedes the payment, and is the consideration for it. The power of the judgment, when it has thus performed its office, is spent. The creditor has thus acquired the fruits of it in cash, and the purchaser an equivalent in the property conveyed to him by the sheriff.

The argument of the defendant's counsel, that Badgley paid his own debt and with the same funds acquired Neilson's farm, is plausible. It is, however, fallacious, because it omits one element in the premises essential to a correct judgment of the transaction. It suppresses the fact, that if Neilson's property is taken to pay the whole judgment his co-debtors are liable to him for contribution. Badgley, it is conceived, is in no better condition by bidding off the farm of Neilson than if it were bid off by a stranger. In either case he is bound to reimburse Neilson, his (Badgley's) full share of the judgment. While therefore, with the same funds in a popular sense, he paid the judgment and acquired Neilson's farm, he at the same time incurred an obligation to Neilson to contribute his just proportion of the amount paid by the property sold. The interest of Badgley was that Neilson's farm should sell for the highest possible price. Whatever it failed to pay remained a charge upon Badgley and his co-debtors. He had no motive for sacrificing the farm. If it was sold for less than its value Neilson, or his creditors, could redeem. If it sold for more than the judgment the surplus belonged to Neilson or his creditors. We think there is no legal objection to one defendant in a judgment

becoming the purchaser, at a sheriff's sale, of the real estate of his co-defendants.

A variety of other questions of a subordinate character, were raised upon the trial, which it is expedient to notice. *First,* the defendant's counsel objected to the reading of the certificate of sale, until proof should be given of the want of goods and chattels of the different defendants to satisfy the judgment. The objection was overruled by the judge, who decided that evidence of the judgment and execution was sufficient to let in the proof of the certificate. The 24th section of the statute, (2 *R. S.* 367,) gives the form of an execution against the defendant's property, and requires the sheriff, if sufficient goods and chattels cannot be found, that then he cause the amount of such judgment to be made of the real estate of the person against whom such judgment was rendered, &c. If the sheriff sells real estate without first searching for and selling the goods and chattels of the defendants, the remedy of the latter is against the sheriff. (*See Evans* v. *Parker*, 20 *Wend.* 622.) The question whether the sheriff has violated his duty in this respect cannot be raised in a collateral action brought by a purchaser or redeeming creditor to recover the land sold. Nor will the court, in general, entertain a motion to set aside a return of nulla bona, but will leave parties to their action against the sheriff. (*Id. supra.*) The sheriff's return is not essential to the title of the purchaser. The title is not created by, nor dependant on the return, but is derived from the previous sale made by the sheriff by virtue of his writ. It is sufficient for the purchaser that the sheriff had competent authority, and sold and executed a deed to him. (*Per Lansing, Ch. J. in Jackson* v. *Sternburg*, 1 *John. Cas.* 155.) It will not be affected by an incorrect return on the writ, nor by an omission to return it altogether. It would essentially impair the confidence in sales of real estate by the sheriff, if their validity might be affected by irregularities in the judgment or execution, or the omission of the sheriff to make a proper return. (*Carman* v. *Roosevelt*, 13 *John.* 97. *McCrea* v. *Bartlett*, 8 *Id.* 361. *Jackson* v. *Cadwell*, 1 *Cowen*, 622. *Woodcock* v. *Bennett*, 1 *Id.* 711. *Jack-*

*son* v. *Walker*, 4 *Wend.* 462.) If, indeed, the judgment be *satisfied before* the sale, even a bona fide purchaser would acquire no title. ( *Wood* v. *Colvin*, 2 *Hill*, 566.) In such case, the sheriff has no subsisting power to sell, and of this the purchaser must take notice at his peril. (*See Jackson* v. *Moon*, 18 *John.* 441 ; *Jackson* v. *Anderson*, 4 *Wend.* 474.) There was, therefore, no error in the decision of the learned judge, in overruling this objection to the certificate and deed.

*Second.* The defendant's counsel objected to the sheriff's certificate of sale, "inasmuch as it appeared that different parcels of the farm, known as such, had been sold together, wherein the defendants in the execution had different estates, and in some of the separate parcels all of the said defendants had different estates, and in other parcels some of the defendants had no interest. That such blending in one general sale, of the various estates in those parcels, rendered the sale to Badgley a nullity." The judge overruled the objection. From the case, it appears that the whole premises described in the declaration, and which are embraced in the deed of the sheriff to the plaintiff, lie in the form of a parallelogram and embrace one hundred acres. They were occupied by the defendant's father for many years, and at the time of his death, as one farm, and were so occupied by the defendant when the judgments under which the sale took place were docketed, and at the time of the sale and at the commencement of this suit, and for many years before. Of this one hundred acre farm, sixty-two and a half acres, in severalty, belonged to the defendant in fee. Thirty-two and a half acres had been set off to the widow of the defendant's father for dower, but the defendent had purchased and was in possession of her life estate. Of the remainder expectant on the determination of the estate in dower, one-fifth belonged to the defendant in fee, and the undivided one thirty-fifth part belonged to each of the other defendants in the judgment in fee, in right of his wife. Of the remaining five acres the one-fifth belonged to the defendant in fee, and the undivided one thirty-fifth part belonged to each of the other defendants in the judgment, for life, in right of his wife.

Neilson *v.* Neilson.

From the map annexed to the case, it appears that the sixty-two and a half acres belonging to the defendant in fee, and the dower right, and the remaining five acres, are each described by definite boundaries, but there is no evidence that they were ever occupied otherwise than as constituting one farm. The sheriff's deed recites that for want of goods and chattels, &c. he sold " all the right, title and interest which the said defendants Henry Neilson, Israel Post, jr., Abraham Post and Benjamin Badgley, or either of them, had on, &c. or at any time since, &c. of, in and to the premises mentioned in the deed, which are the same as those described in the declaration, to Benjamin Badgley, for nine hundred and forty dollars." It then describes the certificate given on the sale, and proceeds to state the redemption by the plaintiff under a bond and mortgage covering the same premises except an undivided fifth part and an undivided thirty-fifth part of about thirty acres, executed by the defendant Henry Neilson and wife, and sundry judgments against Henry Neilson. It then "grants, bargains and sells to the said George W. Neilson, and to his heirs and assigns forever, all the estate, right, title and interest which the said defendant Henry Neilson had on, &c. in the premises in question, describing them as in the declaration.

The statute of executions against property, (2 *R. S.* 369, § 38,) requires that when real estate offered for sale by virtue of any execution, shall consist of several known lots, tracts or parcels, such lots, tract or parcels shall be separately exposed for sale; and if any person claiming to be the owner of any portion of such estate, or of such lots, tracts or parcels, or either of them, or claiming to be entitled by law to redeem any such portion, shall require such portion to be exposed for sale separately, it shall be the duty of the sheriff to expose the same for sale accordingly." In the present case there was in fact but one lot within the meaning of the section. It was then, and had been for years, so occupied by Henry Neilson. And no person required any portion of the estate to be sold separately. Nor is there the slightest reason to believe that the premises would have brought more if the interest of each defendant had been

Neilson *v.* Neilson.

separately sold. The objection goes the length of requiring the sheriff, on an execution against all the tenants in common of a farm, to sell separately the interest of each. This, it is conceded, he is bound to do if required by the owner or a party entitled to redeem. But if no objection is interposed, it is believed the sheriff may sell, at once, the interest of all the defendants in the execution in the real estate advertised for sale. The forty-eighth section obviously contemplates that the undivided shares of joint tenants and tenants in common may be thus sold together, and it points out the mode in which each separate joint tenant or tenant in common, or his creditor having a lien, may redeem his undivided share. There are some conveniencies, no doubt, attending a sale of undivided shares separately. It facilitates redemptions; and the thirty-eighth section has properly made it the duty of the sheriff so to sell, when required to do so by the owner or party entitled to redeem. Subsequent sections have regulated the right of redemption. (§§ 51 *to* 55 *inclusive.*) A creditor having a lien by judgment or decree on a specific portion of any lot sold, may acquire the title of the purchaser to the whole lot. And in like manner a creditor having a judgment or decree which is a lien upon an undivided share or interest in any real estate sold under execution, may acquire the title of the original purchaser to such share or interest, by paying such part of the whole purchase money of such real estate, as shall be in a just proportion to the amount of such share or interest. And by the act of 1836, ch. 525, § 1, a creditor by mortgage on real estate, his assignee or representatives, when the mortgaged premises or any part thereof have been sold on execution, has the same right to acquire the interest of the purchaser of such real estate so mortgaged or sold, as is given to a judgment creditor.

It is objected that the sheriff sold the right and title of all the defendants in the judgments, and the sheriff has conveyed to the plaintiff only the right and title of Henry Neilson. The answer is, the plaintiff redeemed as a creditor by mortgage, of Henry Neilson alone. He could, therefore, acquire no greater estate than that which had belonged to Neilson, and was

bound by the execution, under which Badgley purchased. If that was an undivided share, the plaintiff has acquired it. If it was an estate in severalty as to the whole, or any portion of the premises, he has acquired that, also. The deed to the plaintiff, therefore, does not affect the estate which either Badgley, Israel Post or Abraham Post had in the premises, before the sale. Such estate, if it has not been redeemed, is still in Badgley. Henry Neilson cannot object to this. It is enough for him that the deed conveys the whole of *his* estate in the premises. That entitles the plaintiff to recover from *him* the whole premises of which he was in possession. Nor is it material that the mortgage does not cover the whole lot. Under the 53d section the plaintiff was entitled to a deed from the sheriff, conveying to him the title of the purchaser to the *whole* lot, as against Henry Neilson, in the same manner as if the lien of the mortgage extended to the whole lot. He paid the whole sum bid by Badgley, together with the interest. If he paid too much, the plaintiff alone is the one to complain. It is enough that the deed conveys all Henry Neilson's estate. That entitles the plaintiff to a verdict for the whole premises, which verdict should describe the title of Henry Neilson and the premises recovered, according to the fact. It will be time enough to adjust the rights of Badgley, Israel Post and Abraham Post, when they are brought before the court by an appropriate action.

*Third.* The objection to the plaintiff's right to redeem under the mortgage was, 1st, that the affidavit of the amount due was made by the plaintiff, as assignee, and did not state how he knew the amount justly due; and 2d, that the mortgage was given by Henry Neilson, one of the defendants in the judgment, and could not authorize a redemption of estates sold and belonging to the other defendants. The first objection is answered by the second section of the act of 1836, ch. 525. The affidavit is in exact conformity to that section. And the second objection, by the first section of the same act, in connection with the 53d section. (2 *R. S.* 372.) The mortgage was clearly a lien on a portion of the lot sold, and that entitled the owner of it to redeem the whole lot sold, of which Henry Neil-

son was in possession.   The deed was therefore rightly given
to the plaintiff, conveying all the estate &c. of Henry Neilson.

*Fourth.* The objection that, under a declaration claiming to
recover the whole lot in fee, the plaintiff is not entitled to a
verdict for an estate in fee in one part and a less estate in an-
other part, is substantially answered by the elaborate opinion
of Justice Cady in *Vrooman* v. *Weed,* (2 *Barb. Sup. Court
Rep.* 330.)

*Fifth.* The offer to prove that the mortgage under which the
plaintiff redeemed was given without consideration was correctly
overruled.   The defendant himself never attempted to redeem.
It was not competent for him to contradict the mortgage by
parol evidence.   The other objections raised on the trial, and
not embraced in some of the points already considered, were
not well taken.   There must be judgment for the plaintiff on
the verdict.   And the verdict must specify the estate proved
and established on the trial, according the 7th subdivision of
section 30, 2 *R. S.* 307.

*Judgment for the plaintiff.*

---

SAME TERM.   *Before the same Justices.*