FOSGATE and others *vs.* THE HERKIMER MANUFACTURING AND HYDRAULIC COMPANY and others.

In an action of ejectment brought as a substitute for a writ of right, to enforce a claim which accrued before the revised statutes took effect, an adverse possession of twenty-five years must be shown, in order to bar the action.

Where a right of action exists in favor of a person for the recovery of the possession of real estate, and such person dies, and the estate descends to his heirs, they may recover upon the seisin of their ancestor. And, the writ of right being abolished by statute, the action of ejectment lies for the recovery of the premises, as a substitute for that writ.

In an action thus brought by the heirs, the right of action will not be deemed to have accrued to *them* until the death of their ancestor. And if the suit is commenced within twenty-five years after that event, it will not be barred by the statute of limitations.

Twenty years of adverse possession, although sufficient to bar an action of ejectment proper, is not enough to bar an action of ejectment which is brought in lieu of a writ of right. In the latter case an adverse possession of twenty-five years is necessary.

Parties seeking to recover as demandants in a writ of right must prove a seisin, in themselves or their ancestors, within twenty-five years.

But an actual possession, by taking the *esplees*, is not necessary. If the demandant shows a possession by his servant, or his tenant, this is sufficient.

When a man is once seised of land his seisin is presumed to continue, until a disseisin is proved. And if he leaves the premises vacant, and another takes possession, the latter will be presumed to have entered in subordination to the former title; unless the contrary is proved.

But where a person enters upon premises as purchaser under a *judgment* and upon a claim of right, *that* is a *disseisin.*

A notice, in a newspaper published in this state, of the death of a person in Texas, is no evidence of his death.

Where it appears, on the trial of an ejectment suit, that the individual defendants were in possession of separate rooms in a dwelling-house on the premises, and of separate parcels of land as tenants of a co-defendant, the plaintiff is bound to elect against which of the defendants he will proceed; and a verdict must be rendered in favor of the other defendants.

A general verdict, in such a case, can not be sustained.

THIS was an action of ejectment, tried before the Hon. Charles Mason, one of the justices of this court, at the Herkimer circuit,

in October, 1849.   On the trial the plaintiffs gave in evidence a warranty deed executed by Asa Gifford and wife to John Suiter, dated the twenty-seventh day of September, 1811, acknowledged on the same day, and recorded in the clerk's office of Herkimer county on the twenty-fourth day of December, 1811, expressing a consideration of eleven hundred dollars, and conveying the lands and premises described in the complaint in this action. Also a deed with covenants of warranty, executed by John Suiter, to Bela Fosgate, purporting to convey the same premises, for the consideration of $150, dated the 16th day of March, 1813, and acknowledged and recorded on the 24th day of March, 1813. Lauren Ford then testified on the part of the plaintiffs as follows: "I knew Asa Gifford; I know the lot described in the deed from Gifford to Suiter.   Gifford occupied that lot in 1809, and for some time after that.   I knew John Suiter.   He lived there.   I can not say for how long a time.   He occupied it next after Gifford, as I recollect.   I knew Bela Fosgate; he lived there with his family.   I think he succeeded Suiter in the occupation of the lot."   On his cross-examination he further testified as follows : "I brought several actions of ejectment to get Fosgate in possession of those premises.   The declarations in those actions are entitled of the third Monday of February, 1828. Merry and those claiming under him had been in possession for some time, a year or more, prior to that.   I resided at Herkimer until in 1834.   As far as I know, Merry's folks continued to occupy the lot until the sale to the Hydraulic company.   I do not know when Fosgate was in possession of the lot, nor for how long a time.   I do not know whether he occupied it alone, or with others.   The occupation changed among Fosgate, Suiter, Ethridge and others.   Merry claimed to be the owner.   I can not say when Fosgate left here.   I think he was in possession as late as in 1820."   Charles Van Eps testified on the part of the plaintiffs as follows: "I have known Bela Fosgate and his family since about twenty-two years ago.   Bela Fosgate died seventeen or eighteen years ago.   His wife died in the spring of 1848.   I know his children; there are three of them living.   Serene Birdsall, wife of Samuel Birdsall, Blanchard Fosgate and William

Fosgate *v.* Herkimer Man. and Hydraulic Co.

Fosgate." On his cross-examination the witness further testified as follows : "Bela Fosgate had another son with whom I was formerly acquainted. His name was Walter. He was at the south, and was said to have gone to Texas and died there. Mrs. Bela Fosgate had a letter from Walter's wife, announcing the death of Walter. All the knowledge I have as to his death is derived from two letters from that same source, and from what his mother·and brothers told me of his death. I do not know whether he left any children or not. He married after the death of his father. One of the letters was dated February 4th, 1848, the other in July, 1848. It is generally understood among the relatives and friends of Walter in Auburn that he is dead." The plaintiffs offered in evidence a copy of a newspaper printed at Auburn, in this state, containing an announcement of the death of Walter Fosgate, which was objected to by the defendants, but the objection was overruled, and the said paper admitted, and the defendants excepted thereto. The said newspaper was dated the seventh day of March, 1848, and under the usual head of "Deaths" contained an announcement, that Walter Fosgate died at ——, in Texas, on the thirteenth day of January, 1848. The plaintiffs here rested, and the defendants thereupon moved that the plaintiffs be nonsuited, and insisted that if this action was to be regarded as a substitute for a writ of right, then that the plaintiffs could not recover, without showing an actual possession of. the premises claimed, by themselves, or their ancestor, within twenty-five years before the commencement of this suit, which had not been done. But the defendants insisted that a writ of right could not have been maintained against the parties, upon the facts of this case; that this should be regarded as an action of ejectment merely, and that a recovery therein was barred by the more than twenty years adverse possession, which had been shown by the defendants. The justice refused to nonsuit the plaintiffs, and to such refusal and decision the defendants excepted. The defendants then gave in evidence as follows: A judgment in favor of John O'Ryan against John Suiter for fifty-two dollars and seventy-one cents, rendered before a justice of the peace, and docketed in the clerk's

office of Herkimer county on the sixteenth day of October, 1823. An execution issued upon the said judgment to the sheriff of the said county, with his return thereon, signed by him, dated March 12th, 1824, that he had made $15,25 of the said judgment, of the lands, &c. of the said John Suiter.   A certificate of the sheriff, dated the fourth day of February, 1824, and filed in the Herkimer county clerk's office the fifth day of February, 1824, stating that under the execution aforesaid, he had sold the title and interest of the said Suiter in and to the lands described in the complaint in this action, to Ralph Merry.   A deed executed by the said sheriff to Ralph Merry, dated December 31st, 1825, conveying the lands to said Ralph, in pursuance of the sale.   A quit-claim deed executed by Ralph Merry to Samuel Merry, of the same lands, dated May 25, 1827, for the consideration of $300.   The defendants proved the death of Samuel Merry, and then gave in evidence the last will and testament of the said Samuel, bearing date the fourth day of November, 1826, and admitted to probate by the surrogate of Herkimer county, August 24, 1827, whereby he devised all the real estate whereof he should die seised, to Thomas Phelon and Erastus Miller, his executors thereby appointed, in trust, to receive the rents, issues and profits of the real estate for the term of five years from the death of the testator, and then to sell and dispose of the said real estate, and apply the proceeds thereof in the manner specified in said will. The defendants also gave in evidence a quit-claim deed from Thomas Phelon and Erastus Miller, as the executors of Samuel Merry, deceased, to the Herkimer Manufacturing and Hydraulic Company, dated the twenty-third day of April, 1834, and conveying the lands described in the complaint, for the consideration of $300.   It was admitted by the plaintiffs that the individual defendants were severally in possession of rooms in a dwellinghouse standing upon the said lands, and of separate parcels of all the land, except that in the possession of the Company, as its tenants ; and that the said Hydraulic Company was actually in possession of only that part of said lands over which their canal flowed.   The evidence was here closed, and the defendants insisted, and requested the said justice so to charge the jury,

that regarding this action as a substitute for the ancient writ of right, it could only be maintained by proof of an actual possession of the premises claimed, by the plaintiffs, or their ancestor, within twenty-five years before the commencement of the action; and that such proof not having been given, the plaintiffs were not, under that aspect of the case, entitled to recover; that a writ of right could not have been maintained against the parties, and upon the facts of this case; that this should be regarded as an action of ejectment merely, and that a recovery therein would be barred by the more than twenty years adverse possession, which had been proven by the defendants; that the cause of action on which this suit was brought could not be deemed to have accrued at the time the fifth chapter of the third part of the revised statutes took effect as a law, and that the prior limitation of twenty-five years, which was continued to causes of action then accrued, should not be applied in this action; that no sufficient proof of the death of Walter Fosgate, and without issue, had been given, and that the plaintiffs could recover only three fourth parts of the lands claimed. The justice refused so to charge, and the defendants excepted. It appearing that the defendants occupied distinct parcels of the premises claimed, in severalty, it was insisted, on the part of the defendants, that the plaintiffs should elect against which of the defendants they would proceed, and that a verdict should be rendered for the defendants not proceeded against. But the said justice decided that the plaintiffs could not be compelled to make such election, and that a verdict might be taken against all of the defendants. To which decision the defendants excepted. The justice thereupon charged the jury that the plaintiffs were entitled to recover the whole of the premises described in the complaint, and directed the said jury to find a verdict in favor of the plaintiffs therefor, against all of the defendants. And the jury, thereupon, under such charge and direction, found a verdict in favor of the plaintiffs against the defendants, for the premises described in the complaint. And from the judgment entered upon that verdict the defendants appealed.

*F. Kernan,* for the plaintiffs.

*C. A. Burton,* for the defendants.

*By the Court,* GRIDLEY, J.   It is not denied by the counsel for the plaintiffs, that more than twenty years of adverse possession had elapsed, when this action was commenced.   The title and possession accrued to the father of the plaintiffs, on, or very soon after, the 31st day of December, 1827 ; and the present action was commenced on one of the last days of March, 1849. The time, therefore, though sufficient to bar an action of ejectment proper, is not enough to bar an action of ejectment which is brought in the lieu of a writ of right.

I. This action is brought in the place of a writ of right.   By the 45th section of the act relating " to the commencement of suits," &c. it is enacted " that the provisions of the preceding articles shall not apply to any cases where the right of action shall have accrued or the right of entry shall exist, before the time when this chapter takes effect as a law; but the same shall remain subject to the laws now in force."   (2 *R. S.* 300, § 45.) The revised statutes also declare in what cases the action of ejectment will lie.   The second section of the act concerning ejectments (2 *R. S.* 303) provides that " it may be brought in the same cases in which a writ of right may now be brought by law, to recover lands, tenements and hereditaments, and by any person claiming an estate therein, in fee or for life, either as heir devisee or purchaser."   This section substitutes the action of ejectment for a writ of right, in cases where the writ of right was absolute and the action of ejectment took its place.   But the 5th section of the act relating to the time of commencing actions for real property (2 *R. S.* 293) declares that no such action shall be maintained " unless it appear that the plaintiff, his ancestor, predecessor or grantor was seised or possessed of the premises in question within twenty years before the commencement of the suit."   It now becomes important to see whether the 45th section before cited, applies to the case under consideration.   For if it does not, then the limitation of the revised stat-

utes is a conclusive bar to the action. It is argued that the right of action can not be said to have accrued to the *present plaintiff*, till the death of Doctor Fosgate, which was after the year 1830. The present plaintiffs are his children, and the statute does not read that the action shall have accrued *to them*, or the right of entry shall exist *in their favor*, but that the provisions shall not apply " to cases where the right of action shall have accrued" or the right " of entry shall exist" before the time when this chapter became a law. The right of action existed in favor of the ancestor of the plaintiffs in 1827, and was in full force when this portion of the revised statutes became the law of the land. The case is left then as if this were an action of writ of right, commenced before the revised statutes took effect as a law, and therefore requiring twenty-five years of adverse possession to operate as a bar. (*See McCormick* v. *Barns*, 10 *Wend.* 104; *Cole* v. *Irvine*, 6 *Hill*, 639.) The right of action existed in full force when Dr. Fosgate died. At his death the estate descended to the plaintiffs who are his heirs; and by the common law they could recover on the seisin of their ancestor. The writ of right being abolished by statute, the action of ejectment lies to recover the premises, as a substitute for that writ.

II. The plaintiffs seeking to recover as demandants in a writ of right, it is indispensable that they should prove a seisin in themselves or their ancestors within twenty-five years. And this, the defendants' counsel argues, includes an actual possession by taking the esplees. The esplees embrace the " products which the land yields, as the hay of the meadows, the herbage of the pasture land, corn of the arable land, rents, services, &c." (2 *Jac. Law Dict.* 433.) Therefore if the demandant show a possession by his servant or his tenant, he proves a sufficient possession. Now the evidence in the case shows that Bela Fosgate, the father of the plaintiffs, occupied the premises in question with his family, under a warranty deed bearing date March 16, 1813, executed by John Suiter, who is admitted to be the true source of title. This possession by Fosgate was continued down as late as 1820. The defendants claim under a deed given on a sale under a judgment in the case of *John O. Ryan* v. *John Suiter*,

Fosgate *v.* Herkimer Man. and Hydraulic Co.

docketed the 16th day of October, 1823. The sheriff's deed was executed to Ralph Merry, December 31, 1825. At what time Merry entered does not distinctly appear. It is probable however that he entered soon after the date of his deed. In the absence of evidence it would not be inferred that he entered in a hostile character before that time. By the 8th section of the act before referred to, (2 *R. S.* 293, § 8,) it is enacted " that in every action for the recovery of real estate or the possession thereof, the person establishing a legal title to the premises shall be presumed to be possessed thereof within the time required by law. And the occupation of the premises by any other person shall be deemed to have been under and in subordination to the legal title, unless it appear that such premises have been held and possessed adversely to such legal title for twenty years before the commencement of the suit." Now, notwithstanding this provision may be subject to the exception contained in the 45th section, yet this is an enactment expressing the result of the decisions at common law. (*See* 3 *R. S.* 699, *note, and cases cited by the revisers.*) If then these premises were in the possession of any third person before Merry entered, (of which there is no evidence) such third person will be presumed to have been in possession under the title of Bela Fosgate.

Again; Bela Fosgate was seised and actually possessed of the premises till 1820. Does his seisin cease when he moves off and leaves the premises vacant? or does it continue until he is *disseised?* This question is answered by the case of *The Proprietors of the Kennebec Purchase* v. *John Springer*, (4 *Mass. Rep.* 416.) In that case the demandants proved title and possession of the premises in 1769; and that one James Springer entered on the lot in 1775, and fenced a small part of the lot and took *actual* possession of the part so fenced off. In 1792, he conveyed the premises to the tenant by a quit-claim deed. Chief Justice Parsons says, " The law on this subject is very well settled. When a man is once seised of land, his seisin is presumed to continue till a *disseisin* is proved. The demandant proved a title and seisin in 1769. This seisin must be presumed to continue till they were disseised." In this case it was

held that the tenant gained no right to the land, any farther than the actual possession extended. So in this case Bela Fosgate had title and seisin in these premises in 1820, and that seisin continued till he was *disseised ;* which did not occur (so far as the evidence shows) till Merry took possession under his deed. *That* was an adverse possession, under a claim of right. But while the premises remained vacant, or were occupied by the tenant of Fosgate, his seisin continued.

III. There must be a new trial, however, on the ground that improper evidence was admitted on the trial. There is no authority for the admission of a newspaper printed at Auburn, New-York, (where the plaintiffs reside,) on evidence of the death of Walter Fosgate in Texas. There should have been legitimate evidence of this man's death, and that he died without issue. There was no difficulty in proving both the facts, if they were true, by executing a commission and examining the widow of Walter Fosgate.

IV. It appeared on the trial that the individual defendants were in possession of separate rooms in a dwelling house on the premises, and of separate parcels of land, as tenants of the company ; and that the company were in possession of only that part of the lands over which their canal flowed. After the evidence was closed the counsel for the defendants insisted that the plaintiffs should elect against which of the defendants they would proceed, and that a verdict be rendered in favor of the other defendants. This proposition was overruled, and a general verdict taken against all. This was in violation of the enactment, (2 *R. S.* 307, § 29,) that where "the action is against several defendants, if it appear on the trial that any of them occupy distinct parts in severalty or jointly, and that other defendants possess other parcels in severalty, the plaintiff shall elect at the trial against which he will proceed, and a verdict shall be rendered in favor of the defendants against whom the plaintiff does not proceed." This provision was intended to prevent the uniting of a number of separate suits in one. When the occupation is *joint,* then the verdict is general. But when the possession is *several,* each relying on a separate title and a separate defense, it would

be just as proper to allow a party to sue half a dozen defendants on as many promissory notes, as to allow him to recover against half a dozen tenants of as many pieces of land. Again; the recovery must be against one, of the piece of land of which he is possessed, and against another, for the piece of land he is possessed of, and so on. The practice adopted by the justice, on the trial, would lead to trying several matters in one suit which naturally belong to separate suits. (2 *John.* 438.) There is no necessity for interpreting the 98th section of the code of 1848, or the 118th section of the code of 1849, so as to reach this case.(*a*)

In the controversy with the hydraulic company, as to the land on which their canal passes (and that is all of which they are possessed,) the other defendants are not interested. Again; as to all the tenants, they may say that they are not tenants of the freehold. (14 *Petersdorff*, 313, *note.*) There is no repeal of the provision of the revised statutes, unless by implication; and the implication must be very strong to alter the practice so as to enable a party to try half a dozen actions of ejectment in one suit. The rules of pleading in the code have not been adverted to as affecting this question, and I have not examined whether the facts should have been set up in the answer or not.

There must be a new trial.

                                        New trial granted.

(*a*) These sections are as follows: "Any person may be made a party defendant, who has an interest in the controversy, adverse to the plaintiff." (*Code of* 1848, § 98.) "Any person may be made a defendant who has or claims an interest in the controversy, adverse to the plaintiff, or who is a necessary party to a complete determination or settlement of the question involved therein." (*Code of* 1849, § 118.)