Poor *v.* Horton.

New trial denied.

[MONROE GENERAL TERM, March 7, 1853. *Selden, Johnson* and *T. R. Strong*, Justices.]

---

## EUNICE POOR *vs.* JOHN HORTON.

Although title or seisin may be created by an adverse possession for a period long enough to raise the legal presumption of a grant, yet where the right of entry existed in 1831, when the revised statutes took effect, the possession must have continued 25 years, in order to ripen into a presumption of such grant, so as to bar the rights of the holder of the paper title.

And where the tenant holding adversely, before the expiration of the 25 years conveys the premises to the holder of the regular paper title, he thereby does away with his adverse possession as evidence of seisin; and his wife's initiate title to dower falls with it; so that she cannot recover dower after her husband's death. CADY, J. dissented.

Where the right to bring a writ of right existed when the revised statutes took effect, ejectment, or an action under the code in the nature of ejectment, is a substitute for such writ, and an adverse possession of 25 years is required to bar an entry.

If the premises were wild and uncultivated when the demandant's right of entry accrued, the action of ejectment, as a substitute for the writ of right, may be maintained without actual entry, or taking of the esplees or profits.

Where an entry has been made upon wild land, and a clearing made thereon, but it is not proved by whom, the presumption is that the entry was permissive, and it will be intended to have been under the true title, and not in hostility to it.

A deed of lands held adversely to the grantor is void as against the person thus holding, and others coming in after him; but in respect to all the rest of the world, it is operative, and passes the title from the grantor to the grantee.

And if, after the making of such deed, the adverse holder voluntarily abandons the possession, the grantee may enter and enjoy the land.

The statute to prevent champerty was intended for the protection of adverse claimants; who may, if they choose, renounce the benefit of it.

Where the adverse claimant abandons, or voluntarily surrenders by quitclaim, his right to the premises before his right by adverse possession ripens into

a title, he will be concluded, to the same extent as if he had been evicted by process of law, at the suit of the owner, by paramount title.

A widow can recover dower only upon the strength of her husband's title. She must show a *seisin* in him, during the coverture.

THIS was an action in the nature of ejectment for dower. The plaintiff claimed, as the widow of Enoch Poor, her right of dower in $22\frac{95}{100}$ acres of land, being part of Grass river lot No. 50, in the town of Madrid in the county of St. Lawrence. The complaint averred that Enoch Poor became seised in fee of the premises in question, together with other lands, by deed executed by Asa Lord and Chauncey Rice, on the 1st day of October, 1816; that he had the land surveyed, took possession of the same by virtue of the conveyance, during said year, 1816, and remained in peaceable and continuous possession thereof, till May, 1838; that he enclosed it with a substantial fence; having purchased of Nathaniel Homadieu the betterments on said land; and about the same time having purchased the said land from Lord and Rice, for which he paid them the sum of $275. That he took such possession, claiming title by virtue of said purchase, and cultivating and improving it as above set forth, until 1838. The complaint then averred the marriage of the plaintiff with Enoch Poor, in May 1837, with whom she lived and cohabited till his death in June 1850. The answer denied the allegations in the complaint, except the marriage of the plaintiff, and death of the husband, both of which were admitted. The answer then averred that the defendant and one Hiram Horton were absolutely seised, in fee simple, of the premises in question on the 11th of May, 1838, and that being so seised, they on that day demanded possession of them from the said Enoch Poor. That said Poor had, during his possession, made certain improvements thereon, and that it was agreed between the said John and Hiram Horton and said Poor, that Poor should surrender to them the possession of the premises, and that they should pay him $200 for his improvements. That on or about the 12th day of May, 1838, the defendant and said Hiram Horton did pay to said Poor the said sum of $200, and Poor voluntarily surrendered up the possession of the premises to said

defendant and Horton, who had ever since occupied and enjoyed them.

The reply denied the material averments in the answer, and alleged that the defendant and Hiram Horton wrongfully dispossessed the said Poor, and that the plaintiff had never acquiesced in said wrongful act, and had never executed any conveyance of her right in the premises.

The cause came on to be tried before Justice Hand, at the St. Lawrence circuit, in February, 1852. The marriage of the plaintiff to Enoch Poor, on the 10th day of June, 1837, and the death of Poor in June 1850, were admitted. The plaintiff then gave in evidence a quitclaim deed from Enoch Poor to John Horton and Hiram Horton, dated May 11, 1838, for the consideration of $200, acknowledged May 12, 1838, for the premises described in the complaint, which were admitted by the plaintiff's counsel to be part of Grass river lot No. 50. The plaintiff then put in evidence a warranty deed of the same premises, from Asa Lord and Chauncey Rice to Enoch Poor, dated the 1st day of October, 1816, acknowledged by Lord the 22d day of August, 1818, and by Rice, September 18, 1818. The execution of this deed was witnessed by Joel Gray and Job Hurlburt. It was recorded September 18, 1818. James Simons, a witness for the plaintiff, testified that he knew Enoch Poor in his lifetime, and the lot in question. Poor occupied it prior to the spring of 1838. He had occupied it, to the witness' knowledge, twenty years, before clearing and fencing it. He commenced clearing and fencing it in 1816 or 1817. He cleared and enclosed at that time five acres. He continued in possession from that time down to the spring of 1838. John Horton went into possession of the lot when Poor went out, in 1838, and had been in possession ever since. The witness further testified that he first knew the lot in question in 1815. It was not then cleared or enclosed, except that the timber had been mostly cut off on 5 or 6 acres, and about two acres had been cleared and fenced. Poor began to clear the piece in 1816 or 1817; some of the logs had been cleared off a piece partly cleared before, and he did not occupy the rest of the lot in any manner, except to cut fire wood on it.

No more was fenced.    Six or seven years after he made his first clearing, he cleared another piece, of about five acres—making ten acres in all ; the residue remaining in wood, not fenced, several years longer.    The witness occupied a part of the 25 acres ; a piece of about two acres, on one side of the lot.    He took possession of it under an agreement or purchase from Poor.    The plaintiff having rested, the defendant's counsel gave in evidence a *quitclaim* deed from Chauncey Rice and wife to Jerah Meach, dated 1st October, 1810, recorded June 14, 1814, conveying land which included the premises in question ; also a quitclaim deed from Asa Lord to Jerah Meach dated October 11th, 1814, covering the same premises.    Also a quitclaim deed from Jerah Meach to Ezra Meach, dated August 8, 1814, acknowledged and recorded August 10, 1814, containing the same description as in the last deed, and describing the land as Grass river lot No. 50.

The defendant's counsel then offered in evidence a deed from Ezra Meach to Barnabas Holmes, dated August 7, 1818, recorded February 22d, 1810 ; and also a deed from Holmes to Timothy Reed, dated 23d March, 1820, and recorded March 25, 1823, covering the same premises.    The plaintiff's counsel objected to the introduction of both these deeds, on the ground that they were void for champerty.    The court reserved the question, and the deeds were read in evidence.    The defendant's counsel then read the record of a judgment in the St. Lawrence common pleas, in favor of Daniel Lake against Timothy Reed, filed and docketed January 10, 1821, for $231,29 ; and also gave in evidence the docket of the judgment in the office of the clerk of the county of St. Lawrence.    The defendant then offered in evidence a sheriff's deed of the same premises, made by C. D. Raymond, sheriff of St. Lawrence county, to Horatio G. Munson, dated March 18, 1826, which deed recited a writ of *fi. fa.* issued out of the court of common pleas of the county of St. Lawrence, tested the 28th day of January, 1826, for the sum of $317,77, in favor of Daniel Lake against Timothy Reed, and a sale by the sheriff in pursuance of the said writ, of the premises described in the deed from Holmes to Timothy Reed, to Horatio

Poor *v.* Horton.

G. Munson, conveying all the right and title of said Timothy Reed in the premises, at the time of docketing the judgment or at any time thereafter. It was admitted by the plaintiff's counsel, that no other judgment than the one proved, existed against Read, in favor of Lake. The plaintiff's counsel objected to the deed being read in evidence, on the grounds, 1. Because there had been no judgment on which to found it; and 2. Because it was void for champerty. The court reserved the question, and the deed was read. The plaintiff's counsel admitted that the county clerk had searched and could find no execution in his office, answering to the judgment, or to the recitals in the sheriff's deed, and that C. D. Raymond, the sheriff, was dead. The defendant's counsel then offered in evidence a deed covering the premises conveyed by the sheriff's deed, from Horatio G. Munson and wife to John and Hiram Horton, dated and acknowledged March 24, 1826, and recorded March 27, 1826. The same objection was made to this deed, that it was void for champerty, and the court reserved the question. James Simons was recalled by the plaintiff, and was asked, "By what title did Enoch Poor claim to hold the premises in question?" The defendant's counsel objected to this question, on the ground that .Poor's admissions or declarations were not admissible, except when made to the owner, or against the party making them. The court overruled the objection, and the defendant excepted. The witness answered, that Poor claimed to be the owner of the land, when he sold a part of it to him, (the witness,) in 1816. He got his fire wood off it, and kept one cow, and raised his grain and grass on the piece which he fenced. The five acres were fenced in 1816 or 1817, and the other five acres some years after. There was no more enclosed till 1838. Poor claimed title by paying for the land and taking a deed from Lord and Rice. *The witness paid* $200 *of the price, for Poor, to Asa Lord.*

Caleb Pierce was called by the defendant, who offered to prove by him Enoch Poor's declarations. The plaintiff's counsel objected to his declarations being received for the purpose of affecting the plaintiff's title. The court overruled the objection, and the plaintiff excepted. The witness answered that in 1838—

a short time before Poor went out of possession—he remarked to the witness that he was afraid he was about to lose his lot of land, (alluding to the premises in question.) The witness asked him, How so? He said Mr. Horton claimed it by a prior title; that Horton had made an offer to compensate him for his improvements, or something to that effect, and that he had made up his mind to accept, rather than to lose his land and get nothing. The parties having rested, the court directed the jury to find a verdict for the plaintiff, for one-third of $22\frac{95}{100}$ acres of land, subject to the opinion of the court on a case to be made, and with leave to the defendant to move for a nonsuit.

*Ed. Crary*, for the plaintiff.

*T. V. Russell*, for the defendant.

C. L. ALLEN, J. The marriage of Enoch Poor with the plaintiff having been admitted, and his death in 1850 having been shown, she, as his widow, is entitled to dower of all the lands of which he was seised at any time during the coverture.

I. It is insisted that Enoch Poor had a perfect indefeasible title to the premises in question, by virtue of his twenty years' adverse possession, under a claim of title founded on a written conveyance. It is argued by the counsel for the defendant that possession of the premises by Enoch Poor will not be presumed hostile and adverse to the title of Meach, but must be presumed to have been permissive, and in subordination to that title. This would be so, in the absence of all proof on which to found an adverse possession. Every presumption is in favor of possession in subordination to the title of the true owner. And where a party does not enter originally under a title hostile to the owner, it will be intended that he entered under his title. (9 *John.* 163. 12 *Id.* 365. 16 *Id.* 293.) But if the entry is under color of title, the possession will be adverse. The fact of the possession, and its character, or the *quo animo* of its commencement or continuance, are the only tests, and the entry must be made in good faith, with a *belief* that the land is his,

and that he has a good title. The law then raises the presumption, and the jury or court to whom the question is left are not at liberty to disregard it. (*Livingston* v. *The Peru Iron Co.* 9 *Wend.* 511. *Clapp* v. *Bromagham,* 9 *Cowen,* 530. 2 *R. S.* 294, §§ 9, 10.) It is not necessary that there should be a rightful title. If it is taken and held in good faith, under claim and color of title, and exclusive of any other right, that is all that is required. (12 *Wend.* 674. 7 *Hill,* 476. 8 *Cowen,* 596, *and various other cases.*) The doctrine of adverse possession is too well settled at this day, to render discussion or authority necessary. What then are the facts going to establish that position in the present case?

Enoch Poor, the husband of the plaintiff, purchased the premises, and took a warranty deed from Asa Lord and Chauncey Rice, the *same persons* from whom the defendant derives his title, on the 1st day of October, 1816, and entered into possession under that deed, claiming title, and in 1816 or 1817 commenced clearing and fencing the lot. He at first cleared about five acres. Six or seven years afterwards, he cleared another piece, of about five acres. The residue of the lot remained unoccupied, and without fence, for several years, except that Poor cut fire wood on it. At the time he purchased he paid for the lot. One witness swears he paid $200 of the purchase money, for him, to Asa Lord. He also agreed to sell a piece of the lot lying on one end of it, of about two acres, to the same witness. He thus occupied, claiming title to the lot, until he conveyed to John and Hiram Horton in May 1818, for the consideration of $200. It appears to me that the evidence was abundantly sufficient to establish an adverse possession of twenty years. It was not necessary that an actual occupancy, or enclosure of the whole lot should be shown, as Poor claimed and entered under a warranty deed from the persons admitted to have held the original title, the boundaries of which included the whole premises, and part of which he enclosed and improved, claiming the whole, and using such parts as he chose, in cutting wood. (*Jackson* v. *Woodruff,* 1 *Cowen* 276.) He entered and acted in good faith, paying a fair consideration for the lot, and receiv-

ing a warranty deed for it, improving and cultivating a part of it, and agreeing to sell another. His claim to the lot, under these circumstances was valid, and not founded upon mere parol declarations to a stranger, as is insisted upon by the defendant, but to a person to whom he was contracting to sell a portion in good faith. It was hostile to any other owner. The grant was a good foundation for the adverse possession, and it was no doubt adverse in its inception and continuance. Indeed it has been held in a recent case, that if the grantee in a deed for lands in fee enters in the lifetime of the grantor, and holds both the land and the deed for a period of time sufficient, if adverse, to bar an entry, the character of his possession may be ascertained from the language of the deed ; and if that professes to convey an absolute title in fee, (as the deed does in this case,) the inference is that both the entry and possession were adverse. (*Corwin* v. *Corwin,* 9 *Barb.* 219, 227.)

II. But it is contended by the counsel for the defendant that, admitting that Poor had possession of the whole premises from 1816 to 1838, when he conveyed to the defendant, still the plaintiff is not entitled to recover, for the reason that her husband had no *seisin* or estate of inheritance to which her right of dower could attach. That the defendant had the regular paper title from Lord and Rice, the common source, who conveyed to Jerah Meach by *quitclaim* in 1814, and of course before they conveyed to Poor by deed of warranty, in 1816. That though title or seisin may be created by an adverse holding for a period long enough to raise the legal presumption of a grant, yet this being a case where the right of entry existed in 1831, when the revised statutes took effect, the possession must have continued 25 years, in order to ripen into a presumption of such grant, so as to bar the rights of the holder of the paper title. That Poor, having conveyed to the defendant, in 1838, before that period had run, did away with his adverse possession as evidence of seisin ; and that the plaintiff's initiate title to dower falls with this surrender of her husband's possession, and she is therefore not entitled to recover.

It has been repeatedly adjudged, and is undoubtedly estab-

Poor *v.* Horton.

lished, that where *the right* to bring a writ of right existed when the revised statutes took effect, ejectment, or an action under the code in the nature of it, is a substitute for such writ, and an adverse possession of 25 years is required to *bar an entry.* (10 *Wend.* 104. 23 *Id.* 316. 3 *Hill,* 344. 6 *Id,* 634. *Fosgate* v. *Herkimer Man. and Hy. Co.* 9 *Barb.* 287, 297.) The same cases, or a portion of them, as well establish the other position, that where a party claiming could not sustain a writ of right, but was only entitled to bring ejectment, then he would be barred by an adverse possession of 20 years.

The important question here, then, is, could the defendant Horton, or in case the deed through which he claims since the conveyance to Poor in 1816, should be held void for champerty, could he, in the name of his remote grantor Ezra Meach, have maintained a writ of right against Poor while he was in possession? The plaintiff's counsel insists that he showed in Enoch Poor a perfect and indefeasible title to the premises in question by virtue of his *twenty* years' adverse possession, under his claim of title. By the former statute of this state (1 *R. L.* 185) twenty years' adverse possession was a bar to a right of entry, and a valid defense to an action of ejectment. But the limitation to a writ of right was 25 years. By the revised statutes writs of right were abolished, and the action of ejectment was substituted as a remedy in all proper cases. (2 *R. S.* 303, §§ 1, 2, 3.) These statutes also make 20 years the general period of limitation to this action, whether brought as a substitute to a writ of right, or otherwise. But this period is not universal. These statutes declare that the provision shall not apply to any action commenced, nor to any cases where the right of action accrued, or the right of entry existed, before the time when the chapter took effect; but that all such cases should remain subject to the laws then in force. (2 *R. S.* 300, § 45.) The chapter took effect in 1830. At that time Enoch Poor was in possession claiming title under his deed executed in 1816. But *in fact* he had no right or title, his grantors having conveyed their title to the premises, by deed, to Jerah Meach, in 1810 or 1811, and could have maintained an

action in the name of Ezra Meach, to whom Jerah Meach conveyed in 1814, and through whom he derived title, either of ejectment or writ of right, and the recovery would have enured to his benefit. The defendant then, through his remote grantor, having a right of action in 1830, by writ of right, was not barred, except by an adverse possession of 25 years, from maintaining an action in the nature of a writ of right in the same manner in 1838, when Poor conveyed to him the premises; unless it was necessary for him to prove an *actual* seisin, either in himself or in his grantors, by taking the *esplees* or profits of the land. At common law *actual* seisin was necessary, to maintain a writ of right. Lord Coke says, "If neither the terretenant, nor any of his ancestors, were seised of the land, within the time of limitation, he cannot maintain a writ of right, for the seisin of him of whom the demandant himself purchased the law availeth not." (*Co. Litt.* 293 *a.*) " So the seisin which is requisite in a writ of right, in land, ought to be *actual*, and not seisin in law." Booth, in his treatise on real actions, says the demandant in a writ of right must allege a seisin and taking of the profits, which is called the *esplees*, so that it must be an actual seisin." (*Booth*, 111.) In *Williams* v. *Gwin*, (2 *Saund.* 45 *b*,) it is said that " in order to maintain this action [a writ of right] the demandant must show an actual seisin, either in himself or his ancestor, by taking the esplees or profits of the land. Therefore it is held that a purchaser cannot maintain the action, except upon his own seisin." This question has received considerable discussion in our courts, and I think has been fully settled by the decisions in our own state. In *Jackson* v. *Sellick*, (8 *John.* 262,) the court held that it is as clear a doctrine of the common law that an *actual entry* by the wife or husband is necessary to the completion of a tenancy by the curtesy, as that it is necessary to maintain a writ of right. And yet it was decided that where a feme covert was the owner of wild and uncultivated lands she was to be considered in law and in fact *possessed*, so as to enable her husband to become a tenant by the curtesy. Kent, J. in delivering the opinion of the court, said, " The question is, was she not to be considered as

seised in fact of these premises, so as to enable her husband to become a tenant by the curtesy. To deny this would be extinguishing the title of tenant by the curtesy, *to all wild and uncultivated land.* The possession of such property follows the title, and so continues, until an adverse possession is clearly made out. This is the uniform doctrine of the court. To require the actual occupation would be an unreasonable, if not an impracticable requisition. The general language of the English cases is that there must have been an *actual* entry, but the rule had reference to enclosed or cultivated lands. We must take the rule with such a construction as the peculiar state of new lands in this country requires." He concludes by remarking, " that actual entry, or *pedis possessio*, is not absolutely requisite, and that if the party is constructively seised in fact, it will be sufficient. This case has been followed up, and affirmed by our courts ever since. For although in *Williams* v. *Woodard*, (7 *Wend.* 250,) it was held that a writ of right cannot be sustained by the devisee, upon the seisin of his testator, yet it was admitted that the heir could avail himself of such seisin, and Sutherland, J. remarked that he could see no good reason why a devisee should not be allowed to count upon the seisin of his testator, except that such had been the long established doctrine in England and this country.

In *Bradstreet* v. *Clarke*, (12 *Wend.* 602, 677, 678,) the case of *Jackson* v. *Sellick* was reviewed and approved, and the case of *Given* v. *Litten and others*, (8 *Cranch*, 245,) referred to as authority. Story, J. in delivering the opinion of the court in the last case, says, that even " if at common law an actual *pedis possessio*, followed by an actual perception of the profits, were necessary to maintain a writ of right, *which we do not admit*, the doctrine would be inapplicable to the waste and vacant lands of our country. The common law itself, in many cases, dispenses with such a rule, and the reason of it ceases when applied to a mere wilderness. The object of the law, in requiring actual seisin, was to evince notoriety of title to the neighborhood and the consequent burthen of feodal duties. In the simplicity of ancient times there were no means of ascertain-

ing titles but by the visible seisin, and indeed there was no other mode, between subjects, of passing title, but livery of the land itself by the symbolical delivery of turf and twig. The moment a tenant was thus seised he had a perfect investiture, and if ousted could maintain his action in the realty, although he had not been long enough in possession to touch the *esplees.* The very object of the rule, therefore, was *notoriety,* to prevent frauds upon the land and upon the tenants. We are entirely satisfied that a conveyance of wild or vacant lands gives a constructive seisin thereof in deed to the grantee. It attaches to him all the legal remedies incident to the estate. Upon any other construction, infinite mischief would result." The same doctrine is recognized and supported in *Cole* v. *Irvine,* (6 *Hill,* 634.)

So that it seems to be well established that if the premises were wild and uncultivated, when the demandant's right of entry accrued, the action by writ of right might be maintained, without actual entry. In the present case the land in question was not cleared or enclosed in 1815, or for several years after the deed to Jerah Meach, except that the timber had been cut off of about 5 or 6 acres, and 2 acres of it had been cleared, but it was not proved by whom. The presumption is, therefore, that it was by the legal owners. The proof, then, is either that the land was wild and uncultivated when Enoch Poor entered, or that if any clearing or improvement had been made, it had been done by the legal owners, and then there was *actual seisin.* The witness. James Simons, testified that a man by the name of Howard had been upon the lot prior to 1816 and burned coal. This entry must be presumed to have been permissive, and will be intended to have been under the true title, unless there is clear proof, (which there is not,) that it was claimed to be in hostility to that title. (6 *John.* 197. 3 *John. Cas.* 124. 9 *John.* 163. 12 *Id..* 365. 16 *Id.* 291. 2 *R. S. 3d* ed. 23, §§ 143, 144, 146.) Here then, if the land was cultivated or improved, it was done, so far as the evidence shows, by or under the owners, and actual seisin is shown, so as to make the remedy by writ of right perfect, even at common law. In either point of view, therefore, the right of entry by writ of right existed

Poor *v.* Horton.

in 1830, and continued till 1838, not spent when Poor conveyed to the defendant. Poor knew, or at all events was bound to know, that his grantors had conveyed the premises to Jerah Meach, as his (Meach's) deeds were on record in 1814, before Poor's purchase, and the law presumed all entries to be under that title. This voluntary surrender by Poor before the expiration of the 25 years, did away with his adverse possession, as evidence of seisin, and the plaintiff's initiate title to dower fell with it, as it was liable to be defeated by any subsisting claim in law or equity, which would have destroyed her husband's seisin. At the time of Poor's conveyance in 1838, he was liable to have been ejected, as the defendant, in the name of his remote grantor, was not yet barred by lapse of time from asserting his title to the premises.

It is contended that the whole of the conveyances under which the defendant claims, after 1816, are void for champerty; all of them having been made while Poor was in possession, claiming adversely. As against Poor while he was thus holding adversely, those deeds were probably void. But it has before been remarked that Horton, in 1838, could have sued and counted in the name of Ezra Meach his remote grantor, who obtained title in 1814, to whom the objection could not apply, and a recovery would have enured to his benefit. They were only void, however, as against him and those coming in after him. (1 *R. S.* 739, § 147. 2 *Id.* 691, § 6. 2 *Barb. Ch.* 398. 9 *John.* 55. 8 *Wend.* 440. 9 *Id.* 511. 6 *Hill*, 634, *and numerous other cases.* The deeds were not void as to all the rest of the world, and passed the title from the grantor to the grantee. And if the adverse holder voluntarily abandoned the possession the grantee could enter and enjoy the land. (*Livingston* v. *Proseus*, 2 *Hill*, 526. *Kenada* v. *Gardner*, 3 *Barb. S. C. Rep.* 589.)

The statute was intended for the protection of adverse claimants, who might, if they chose, renounce the benefit of it. (5 *Hill*, 273,) Poor, the adverse claimant here, abandoned or voluntarily surrendered by quitclaim his right to the premises, before that right had ripened into a title, and must, I think, be

The objection as to the variance between the judgment proved, and the recital in the sheriff's deed, does not affect the validity of the deed, so far as the *bona fide* purchaser in this case was concerned. (5 *Wend.* 529. 10 *John.* 181. 5 *Barb.* 565. 3 *Id.* 404. 9 *Cowen,* 182.) It is argued that the declarations of Poor *after* he had obtained title to the premises, are not admissible as evidence to affect the plaintiff's right to dower. There might be force in this argument if Poor had ever obtained title by adverse possession, but the conclusive answer is, that he never did obtain such title, having abandoned the possession before the requisite lapse of time. The same answer applies to the objection that as the defendant could not maintain a writ of right because his deed was void, he cannot set up such defense to this action. The difficulty is that the plaintiff must recover upon the strength of her husband's title; that is, she must show a *seisin* in him during the coverture; which she fails to do. It is not contended that the defendant is estopped, by having taken a quitclaim deed from Enoch Poor, from disputing his title. Since the cases of *Sparrow* v. *Kingman,* (1 *Comst.* 242,) and *Finn* v. *Sleight,* (8 *Barb.* 405,) that doctrine can no longer be urged.

On the whole, I am of opinion that Enoch Poor was never seised of the premises in question, and that the defendant is entitled to judgment.

HAND, J. concurred.

CADY, J. dissented.

Judgment for defendant.

[WASHINGTON GENERAL TERM, May 2, 1853. *Hand Cady* and *C. L. Allen,* Justices.]