JACKSON, ex *dem.* LATHROP AND ANOTHER, *against* DEMONT.

THIS was an action of *ejectment*, to recover the possession of lot No. 75. in the township of *Junius*, in the county of *Seneca*. The cause was tried at the *Seneca* circuit, in *June*, 1811, before Mr. Justice *Yates*.

The lot was conveyed, by letters patent, the 29th of *January*, 1791, to *John Wilcox*, who executed a deed for his military lot to *Rufus Lathrop*, one of the lessors, in 1794.   The plaintiff produced the letters patent, and a witness testified, that, about

If a person out of possession conveys to a stranger land held adversely by another, the conveyance is void, so that the stranger cannot maintain an action upon it; and it seems not to be material

as to the operation of the deed, that the knowledge of the adverse possession should be brought home to the parties, though it might be material, if either of them were prosecuted for the penalty given by the statute against selling pretended titles.

Where a tenant in possession of land, claiming to hold adversely, after issue joined in an action of ejectment against him, received a deed or release of the premises from one of the lessors, it was held, that admitting the sale so made to be an act of *maintenance*, (a point not decided,) yet the deed was effectual, as between the parties to it, and a bar to the lessor who executed it.

And where such a deed was given in evidence at the trial, by consent of the parties, it was held that though it regularly ought to have been pleaded *puis darrein continuance*, yet having been admitted by consent, it must have the same effect as if it had been duly pleaded.

ALBANY,
Jan. 1812.

JACKSON
v.
DEMONT.

13 years ago, he received the deed from *Wilcox* to *Lathrop,* which, after diligent search, he had been unable to find, and believed it to be lost. The defendant had been in possession of four acres of the lot, as tenant to *Elijah Miller,* from the 1st of April, 1808; and he gave in evidence a deed from *Rufus Lathrop* to *Elijah Miller,* for the lot, dated the 8th of *March,* 1811.

The plaintiff then gave in evidence a deed, dated the 8th of *April,* 1808, executed by *Rufus Lathrop* to *Joseph Nichols,* the other lessor, for the lot in question.

The defendant then produced in evidence a deed for the same lot, dated the 25th of *November,* 1807, and recorded the 27th of *March,* 1808, from *Samuel Lathrop* to *Elijah Miller;* and also a lease, for the four acres possessed by the defendant, dated 4th of *April,* 1808, to him from *Elijah Miller.* It appeared that the defendant had cleared the four acres, and was in possession, before the date of the lease, and had continued in possession, as tenant to *Miller,* until the commencement of the suit.

The judge charged the jury, that the possession of the defendant was adverse to *Rufus Lathrop,* when he conveyed to *Joseph Nichols,* so as to prevent the operation of the deed, and that they ought to find a verdict for the defendant. And the jury found a verdict accordingly.

A motion was made to set aside the verdict, and for a new trial.

*Gold,* for the plaintiff, contended, that a possession, in order to oust a person having right, must commence by disseisin.* The interference of *Miller* could produce no other effect than to constitute a tenancy at sufferance. It did not affect the freehold, nor did it amount to a disseisin. What may create an adverse possession, so as to allow a limitation under the statute to commence, will not amount to a disseisin. This case does not afford an exception to the general rule on this subject. If a disseisin could commence, *ex post facto,* or subsequent to the original entry, yet there is no evidence in this case to support the fact.

Though the defendant consented to hold under *Miller,* yet the purchase, by *Miller,* of *Rufus Lathrop,* was, in itself, an act of *maintenance;* and the conveyance, therefore, fraudulent and void.† Though a person may purchase a pretended title, for the sake of peace, and to protect himself, yet he cannot make

* 9 *Viner,* 85.
*Diss. C. s.*
10, 11, 12.
1 *Leon.* 209.
1 *Salk.* 246.
2 *Schoales &*
*Lefroy,* 97.
12 *East,* 141.
1 *Johns.*
*Rep.* 156. 6
*Johns. Rep.*
197.

† 15 *Viner,*
*Maint. E. pl.*
22. *note.* 1
*Hawk.* c. 86.
s. 17.

such a purchase, for the purpose of injuring or defeating the title of another.*

The peculiar state of this country, so different from that of *England*, renders the doctrines about maintenance and disseisin inapplicable here, in their full extent. The cause of the *English* statutes against maintenance, has never existed in this country, where the course of justice flows free, and uninterrupted by the influence of powerful men.

· If *Rufus Lathrop* was disseised, he became, on the sale to *Nichols*, his trustee of the title, and the purchase afterwards by *Miller*, of *Lathrop*, was fraudulent and void.

Again, the deed or release from *Lathrop* to *Miller*, of the 8th of *March*, 1811, ought not to have been received in evidence, not only for the reasons already stated, but because, being since the issue was joined in the cause, it ought to have been pleaded *puis darrein continuance*, and entered on the *nisi prius* record.†

*Rodman*, contra, insisted, that the possession of the defendant, being under *Miller*, a person claiming title, was a disseisin of all persons claiming adversely ;‡ that *Miller* being in possession by his tenant, (the defendant,) at the time of the deed to *Nichols*, that deed was inoperative, by reason of the adverse possession; that it was competent to *Miller*, or the defendant, to buy in an outstanding title or claim, in order to protect his own.§

The deed, admitting that it ought to have been pleaded, having been received in evidence, by consent, at the trial, must be considered as if it had been pleaded, and the plaintiff cannot now object to its admission or effect on that ground.

KENT, Ch. J. delivered the opinion of the court. Two questions arise on this case: 1. Is the lessor, *Nichols*, entitled to recover upon the deed from *R. Lathrop*, to him ? 2. If not, then can *Lathrop* himself recover, in opposition to his deed to *Miller*, under whom the defendant holds ? Unless we can answer one of these questions in the affirmative, judgment must be rendered for the defendant.

1. At the time of the execution of the deed, from *Lathrop* to *Nichols*, the defendant was in possession under *Miller*, who held the land under a deed from another source. The possession was then adverse to the claim or right of *Rufus Lathrop*, and it is a

VOL. IX.                         H

ALBANY,
Jan. 1812.

JACKSON
v.
DEMONT.
* 1 *Hawk.*
557. c. 86. s.
17. *Co. Litt.*
36. a 5 *Johns.*
*Rep.* 489. 500.

†7 *Johns. Rep.*
194. 2 *Rich.*
*C. P. P.* 13.
*Buller's N.
P.* 97. *Yelverton*, 180.

‡ 1 *Caines*,
90. 2 *Caines*,
183. 3 *Johns.*
*Rep.* 159.

§ 8 *Johns.*
*Rep.* 137.

well settled principle of law, that if a person out of possession conveys to a stranger, land held adversely by another, the conveyance is void, so that the stranger cannot maintain an action upon it. Nothing passes by such a deed; for a right of entry, or a right in action, was not assignable by the common law. This doctrine is by no means a novel one, for it has been so frequently and uniformly acknowledged, both in *England* and in our own courts, that it has now grown to be familiar, and cannot be open for discussion. (*Litt. sect.* 347. *Co. Litt. ibid.* and 369. a. *Plowd.* 88. b. 2 *Sch. & Lef.* 65. 105. 2 *Caines,* 183. *Jackson* v. *Todd.* 5 *Johns. Rep.* 489. *Williams* v. *Jackson.*)

Indeed this principle was conformable to the whole genius and policy of the common law, by which a tenant could not aliene his fee or tenure, without the consent of his lord, nor the lord his seigniory, without the consent or *attornment* of his tenant. (*Wright on Tenures,* 166. 171.) A feoffment was void without livery of seisin; and without possession, a man could not make livery of seisin. (*Perkins,* s. 220.) Nor was this principle peculiar to the *English* law. It was a fundamental doctrine of the law of *feuds,* on the continent of *Europe.* No feud could be created or transferred without investiture, or putting the tenant into possession. *Feudum sine investitura nullo modo constitui potest. Investitura proprie dicitur possessio.* (*Feudorum,* lib. 1. tit. 25. lib. 2, tit. 2.) And *Voet* says, that delivery of possession is still requisite in *Holland* and *Germany,* to the transfer of real property, (*Com. ad Pand.* lib. 41. tit. 1. s. 38.) It is no doubt the general sense and usage of mankind, that the transfer of real property should not be valid, unless the grantor has the capacity, as well as the intention, to deliver possession, and actually does it. *Blackstone* says, that it prevails in the codes of " all well governed nations," for possession is an essential part of the title and dominion over property. (2 *Com.* 311, 312.)

That the possession of *Miller* was in fact adverse to the right of *R. Lathrop,* is most clearly made out, because he was in possession under colour and claim of title, by virtue of a deed from *Samuel Lathrop.* This amounted to one of the species of disseisins mentioned by *Bracton,* who says, (*lib.* 4. fo. 161. b.) that " disseisin may be not only when the owner, or his family or steward, are violently ejected, but also when the owner having gone abroad and left his possession unoccupied, he is denied entry on his return; and so it is if one uses another's land against his

will, claiming it to be his own, *contendendo tenementum esse suum quod est alterius.*"

In the modern case of *Doe* v. *Prosser, (Cowp.* 217.) Lord *Mansfield* gives a sample of what constitutes an adverse possession. " If upon demand by the co-tenant of his moiety, the other denies to pay and denies his title, saying *he claims the whole, and will not pay,* and *continues in possession ;* such possession is adverse and ouster enough." It does not seem to be material, as it concerns the operation of the deed, that the knowledge of the adverse possession should be brought home to the parties, though it might be material, if either of them was prosecuted for the penalty given by the statute against selling pretended titles. In *Slynwright & Page's Case,* (1 *Leon.* 166.) it was considered, that the deed might be void, and yet the party not liable to the penalty of the statute. " The first question in that case was, if the lease, being made by one out of possession, and not sealed and delivered upon the land, and so not good in law as to pass any interest, be within the statute aforesaid." But, in this case, the legal inference is, that *R. Lathrop* knew of the adverse possession of *Miller,* when he sold to *Nichols,* for he must be presumed to be acquainted with his own right ; and the presumption is, that *Nichols* purchased under the same knowledge, for *Miller* had not only a tenant in actual possession, but his deed from *S. Lathrop* had been recorded several days before, and the lands lay in a county in which deeds, as well as mortgages, are required to be recorded. It is extremely improbable that *Nichols* purchased, without having previously inspected the state of the title upon record, and inquired into the claims of the actual occupant. He had, at least, constructive notice, or notice in law.

The title set up by the lessor, *Nichols,* most undoubtedly fails, and the next point is, whether the other lessor, *R. Lathrop,* is entitled to recover.

2. It might possibly be a question whether the acceptance of the deed from *R. Lathrop* to *Miller,* was not an act of maintenance in *Miller,* as it was taken after the suit was brought, (at least it was so understood upon the argument,) and, probably, with an intent to defend himself with it in that suit. But as *R. Lathrop* was one of the lessors of the plaintiff, and had the title of the land in himself, it was not very inconsistent with good policy that he should be enabled to sell, and the tenant in possession to purchase, for it was putting an end to the controversy. We mean

not, however, to discuss and decide this point, in the present case; for even admitting the sale to have been an act of maintenance, yet the deed was effectual, as between the parties to it. *Rufus Lathrop* cannot recover in opposition to his deed to *Miller.* It operates to estop him; and it seems to be a principle which runs through the books, that a feoffment upon maintenance or champerty, is good as between the feoffor and feoffee, and is only void against him who hath right. (*Bro. tit. Feoffments,* pl. 19. *Fitzherbert,* J. in 27 *Hen.* VIII. fol. 23. b. 24. a. *Co. Litt.* 369. a. *Cro. Eliz.* 445. *Beaumond,* J. *Hawk.* b. 1. c. 86. s. 3.) The consequence is, that when the question is upon the demise of *Rufus Lathrop,* his deed to *Miller* is an effectual bar to his recovery. The only objection that could have been made to the introduction of this deed, at the trial, (assuming it to have been given after suit brought and issue joined,) was, that it ought to have been pleaded *puis darrein continuance,* so that it might have been returned as parcel of the *nisi prius* record. This is, no doubt, the general and proper course. (*Yelv.* 180. 2 *Rich. Com. Pleas,* 13.) But it is a sufficient answer to this objection, that the deed was admitted in evidence, and went to the jury, without opposition. It is, then, to be considered as admitted by consent, and is to have the same effect as if it had been duly pleaded.

Neither of the lessors of the plaintiff have, then, shown a right to recover. We cannot give effect to the deed to *Nichols;* because of the adverse possession existing at the time of the sale; and we cannot allow *Lathrop* to recover, in defiance of his own deed to *Miller.* To yield to the pretensions of either, would be shaking established principles; and, though *Nichols* may, perhaps, have ground to complain of the act of *Lathrop* in conveying to *Miller,* instead of lending his name and assistance to recover the possession of the land for him, yet that consideration cannot affect this case. In the action of ejectment, we must look steadily to the legal title. His remedy (if any) must be against *Lathrop,* for assuming to sell, when he was incapacitated to transfer his interest. *Nichols* cannot interpose in this suit, and prevent the operation of the deed to *Miller.* As to him, it is *res inter alios acta.* He must stand upon the strength of his own demise.

The motion to set aside the verdict is, therefore, denied.

VAN NESS, J. dissented.

Motion denied.