## ALEXANDER HAMILTON, Jr., and MARTIN LIVINGSTON, impleaded with WILLIAM S. GLEASON, v. WENDELL WRIGHT.

*Attorney and Client—Authority to appear—Right of Defendant—Ejectment—Grantee's Right to sue in name of Grantor.*

The law warrants a party in giving faith and confidence to one who by law is authorized to hold himself out as a public officer clothed with authority to represent others in the Courts.

Where an attorney appears for a party, the general rule applicable is, that a retainer will be presumed; and the adverse party, having no notice to the contrary, may act upon such presumption.

The object of Section 111 of the Code of Procedure as amended is to *limit the operation of the section as previously enacted*, not to create any new authority as between the grantor and grantee for the use of the name of the former by the latter.

CLERKE, J.—On the 20th of March, 1863, the Plaintiffs, Hamilton and Livingston, as trustees under the will of Margaret Livingston, deceased, conveyed a lot, consisting of about two acres, in Ulster county, to Gleason, the other Plaintiff. At the time of the conveyance, this lot was held and occupied by the Defendant, Wendell Wright, claiming a title adverse to that of the grantors. After the execution and delivery of this conveyance, Gleason commenced the above-entitled action, to recover possession of this lot; and, without express authority from Hamilton and Livingston, joined them with himself as Plaintiffs. On the trial, the jury, under the direction of the Court, found a verdict for the Defend-

ant, on the ground that the premises had been for more than twenty years in the actual possession of the Defendant and his grantors, under a claim of title adverse to that of the Plaintiffs. The Plaintiffs Hamilton and Livingston, after the judgment for costs had been entered on this verdict, made a motion before the Special Term of the Supreme Court, in the Third District, that the judgment against them be vacated, on the ground that their names had been used as Plaintiffs without authority, or, in case Gleason failed to pay the judgment, that his attorney should be compelled to do so. The motion was denied; and on appeal to the General Term, the order was substantially affirmed, although so far modified as to direct that the costs be in the first instance collected, if collectable, against the Plaintiff Gleason. The question of liability of the Plaintiffs' attorneys to Hamilton and Livingston, in case the latter should have to pay the costs, was not determined, but left open. No costs were allowed to either of the parties as against the other, upon the appeal.

By statute it is declared that "Every grant of lands shall be absolutely void, if, at the time of the delivery thereof, such lands shall be in the actual possession of a person claiming under a title adverse to that of the grantor" (1 R. S. 739, § 147, marginal). So that, of course, Gleason could not have maintained an action to recover possession of this lot, even if Wright could have shown adverse possession only for a year previous to the delivery of the deed, without uniting Hamilton and Livingston with him as co-Plaintiffs—the grant to him being absolutely void. Thus, even where the party holding the adverse possession had no sufficient defence, he would be successful in any action brought by the grantee alone.

Section 111 of the Code of Procedure, which declares that "Every action must be prosecuted in the name of the real party in interest," provides, notwithstanding, that "an action may be maintained by a grantee of land in the name of a grantor," &c., "when the grant or grants are void by reason of the actual possession of a person claiming under a title adverse to that of the grantor at the time of the delivery of the grant."

The question then arises, whether a grantee, under such circumstances, can maintain an action in the name of the grantors without their express authority? In my opinion no express authority from the grantors is necessary. The law gives it, moreover, by delivering a deed of the premises. While they were held in adverse possession by Wright, it may be fairly implied that the grantors consented that Gleason should be allowed to avail himself of every legal means by which he could obtain possession of these premises. By doing this they evidently must have intended that he should have possession of them, and that he should pursue the method directed by any existing law to effectuate that possession. They are presumed to be cognizant of the law.

It is highly probable that the grantors knew of the adverse possession at the time when they made the conveyance to Gleason ; for it was proved at the trial that Wright had been in possession of the premises for twenty years. If they knew this, and at the same time intended that Gleason should not use their names to enable him to recover possession, they were guilty of great unfairness by giving him a deed that could be of no possible advantage to him. The Appellants certainly had no equity against the Defendant Wright. By making the conveyance they enabled Gleason, who is alleged to be irresponsible, to prosecute the action, and put the Defendant to costs. Their act has occasioned this injury to him, and they should not be permitted to escape without indemnifying him for it.

The modification of the order by the General Term should not be disturbed.

The order should be affirmed, with costs.

*H. A. Nelson* for Appellants.

*T. R. Westbrook* for Respondent.

WOODRUFF, J.—The general rule, that an appearance by attorney, whether for the Plaintiff or the Defendant, if there be no collusion, may be recognized by the adverse party as authentic and valid, I deem important to the safe administration of justice and well founded in the scheme and plan of such administration,

whether in England or this country, ever since such officers were commissioned to represent litigants in the Courts. Receiving their authority from the Courts, they are deemed its officers. Their commissions declare them entitled to confidence, and in a just sense their license is an assurance not only of their competency, but of their character and title to confidence. The direct control of the Courts over them, as officers, by way of summary discipline and punishment to compel the performance of their duty, or to suspend or degrade them, is retained and exercised as a guarantee of their fidelity.

It is no denial of the rule, that where there are special circumstances calling for its relaxation, the Courts may and do relieve from its rigid application. The exception arising from such special circumstances strengthens as well as recognizes the rule itself.

Hence, when an appearance is entered by an attorney, without authority, the inquiry whether such attorney is of sufficient responsibility to answer for his unauthorized conduct to the party injured thereby, is entertained.

And it may be proper always to inquire whether the injury to the party is irremediable, unless such appearance be set aside, and the proceedings founded thereon vacated.

In the exercise of their general equitable control over their own judgments, the Courts may and should consider whether they can relieve the party for whom an unauthorized appearance is made, without undue prejudice to the party who has in good faith relied upon such appearance, and the official character of the attorney who appears.

But it would be at variance with the scheme and plan upon which we universally administer the law, if a Defendant could be prosecuted by a responsible attorney, in full authority to practise in our Courts, and after having successfully and in good faith defended, as the case might be, through all the tribunals of justice, and to final judgment in the Court of last resort, be required to submit to an order setting aside the proceedings, and be left to be again prosecuted for the same cause of action, on the *mere ground*

that the Plaintiff's attorney had no authority from the Plaintiff to bring the action.

The law which gives to attorneys their commissions must be deemed to guarantee to Defendants protection against such a result, and at the same time the rule should yield to equitable considerations, where they arise, and should permit the Courts to give relief when they can thereby prevent irremediable wrong to either party.

And if it be asked, Why should the party for whom he appears be left to seek his remedy against the attorney? Why should not the party who has been subjected to an unauthorized litigation pursue that remedy, rather than cast that hazard and burden upon one who has done nothing to deserve it?

The answer lies in the suggestion already made, that the law warrants a party in giving faith and confidence to one who by law is authorized to hold himself out as a public officer, clothed with power to represent others in the Courts; and besides this, the consequences of the contrary rule would often be altogether disastrous.

Evidence would be lost; witnesses die; the Statute of Limitations bars claims; and death of parties themselves might often happen. In various ways, to set aside proceedings at the end of a protracted litigation would be to work inevitable wrong to the party who had relied upon an appearance.

It is said that proof of the authority by the attorney to appear and prosecute should be demanded, if the party would be safe.

If such demand could in all cases be insisted upon, it would be only one step towards safety. It might often be practically ineffectual. Ex parte evidence of authority might be produced, and yet, if the party might afterwards impeach it, the question would again arise in all its force. Besides, it is not the practice to require attorneys to produce their authority, except in special cases. No doubt there is power in the Courts to order it. It has sometimes been done (The Ninety-nine Plaintiffs *v.* Vanderbilt, 4 Duer, 632).

When, pending a litigation, the authority by the attorney to

appear is denied, and application is made in due season, the Court, if probable cause appears, would in general protect the party applying.

Still the general rule remains, that a retainer will be presumed, and the adverse party, having no notice or ground of suspicion, may act on that presumption (3 Merivale, 12; 2 Mylne & Keen, 1; 1 Ves. Jr. 196; 6 Johns. 297; 9 Paige, 496).

And in general, where there are no circumstances of suspicion, or facts indicating fraud, and no evidence of bad character discrediting the appearance, the Courts do not require a reputable and responsible attorney to exhibit his authority to appear (see 6 Johns. 34; 5 Duer, 643).

It is, however, suggested, that as in ejectment the Defendant is authorized by statute to require the attorney for the Plaintiff to produce his authority (2 Rev. Stat. 305), this action should be deemed an exception to the general rule, and it be held that the Defendant's own laches have caused his misfortune, if it afterwards appears that the Plaintiffs did not authorize the suit.

But it is obvious that the statute itself does not furnish complete protection. It only makes the production of apparent written authority, sustained by the affidavit, presumptive evidence. And if the authority does not actually exist, the same question will arise in ejectment as in other actions—How far is the Plaintiff bound by the appearance of an attorney for him? And as respects an appearance for a Defendant, the statute makes no provision.

I do not think, therefore, that the omission of the Defendant to demand the production of authority, where he has nothing to put him on his guard, awaken his suspicion, or to lead him to distrust the good faith of the attorney who prosecutes the action, should change his right to insist upon his judgment, when it is not claimed that the attorney is not of full and sufficient responsibility to answer to the Plaintiff for any costs or other damage he may have sustained.

In Bean v. Mather (1 Daly, 440) the Court do no more than exercise their general discretion to open a judgment and let a Defendant in to plead under special circumstances, in which it

was equitable and proper, although it is quite true that observations are made, in the opinion of the Court, in derogation of the justice of the rule I have been considering, and, as I think, overlooking its proper foundation and the policy of its general maintenance. . It is at least doubtful whether the Code of Procedure, as amended in 1862, affects the question on either side.

It was settled before the Code was adopted, that a deed of lands held in adverse possession was good against the grantor and his heirs, and against strangers, though void as against the party in possession of the lands at the time of its execution; that being void to the latter, the grantor could maintain the action to recover the possession, and the grantee could not, but that a recovery in the name of the grantor enured to the benefit of his grantee (Jackson *v.* Demont, 9 Johns. R. 55; Williams *v.* Jackson, 5 id. 489; 1 Johns. R. 159; 9 Wend. 516; 15 id. 164; Livingston *v.* Proseus, 2 Hill, 526).

When, therefore, the Code had, in section 111, provided that " Every action should be brought in the name of the real party in interest," a doubt arose whether an action to recover lands thus conveyed could be brought by any one. If brought in the name of the grantee, he could, as against the party in possession, show no title; for or against such party, his deed was void. If brought in the name of the grantor, it might be shown that he was not the real party in interest, because, if he recover, his recovery would enure, not for his own benefit, but for the benefit of the grantee.

The Code was therefore amended so as to exclude such a conclusion, by adding to the section the provision that " an action may be maintained by a grantee of land, in the name of a grantor, when the grant or grants are void by reason of the actual possession of a person claiming under a title adverse to that of the grantor at the time of the delivery of the grant."

The purpose was, I think, to limit the operation of the section as previously enacted, and not to create any new authority as between the grantor and grantee for the use of the name of the former by the latter.

If by reason of the giving of the deed such authority was to be implied, very well; if not, I do not think the Code conferred it.

Opinion by WOODRUFF, J.

To the suggestion that the deed was given by the Appellants as executors, and such a deed did not warrant an action in the name of the Appellants as individuals, it must suffice to say that the Appellants have not seen fit, in their motion-papers, to set out the will under which they convey; and the deed itself is apt to convey their own estate in the premises, and does not show that in giving the deed they were executing a naked power.

I think the order of the Supreme Court, requiring the Defendant to first endeavor to collect the costs from the grantee Gleason, was all to which the Appellants were entitled.

The order must be affirmed.

Affirmed.                      JOEL TIFFANY,
                                       State Reporter.