27h    429
38 Mis⁶ 69

</div>

IN THE MATTER OF LEWIS S. BURCHARD, AN ATTORNEY, ETC.

*Attorneys — power of the court to inquire into their right to practice — to revoke their license in a summary proceeding — An attorney is not an officer of the State — Graduates of law schools are not subject to the rules of the Court of Appeals — they may apply for admission to the General Term of any department.*

One Burchard, a graduate of the Columbia Law School, applied, under chapter 202 of 1860, and chapter 25 of 1881, for admission to the bar at the May term of the General Term in the First Department. His application was denied on the ground that he had not been in attendance upon the law school for the requisite length of time. In the September following, the General Term in the Second Department acted favorably upon a similar application made to it by another graduate of the same law school. Thereafter Burchard made an

application to the General Term of that Department and was admitted. At the time of making these applications Burchard was a resident of the First Department.

This application was made to have the license authorizing him to practice revoked.

*Held,* that as Burchard was practicing as an attorney in the First Department his right so to do was the subject of inquiry and examination by the court, and that if he had obtained his license without the authority of law it might be revoked by a summary proceeding of this character.

That an attorney is an officer of the court and is not a public officer of the State in such a sense as to be entitled to have his right to the office determined by a legal action.

That, however irregular it was for Burchard to make the second application to the General Term of the Second Department, and however indecorous it was for that court to entertain it, yet the only question that could be considered upon this application was whether or not the General Term of the Second Department had jurisdiction to hear and determine the application made to it

That under the existing laws and the Code of Civil Procedure graduates of the Columbia Law School and of the other law schools in the State were subject only to the laws existing on the 31st day of August, 1877.

That they were not subject to the rules of the Court of Appeals which require, among other things, that each applicant should apply for admission only to the General Term of the department in which he resides.

That the General Term in the Second Department had jurisdiction over Burchard's application, and that this application should accordingly be denied.

The policy of continuing these exceptions in favor of the law school graduates, considered and condemned.

APPLICATION to revoke a license authorizing the person proceeded against to practice as an attorney, etc., in the courts of this State.

*Lewis A. Delafield,* in support of application.

*Theodore W. Dwight* and *George Chase,* opposed.

DANIELS, J.:

Lewis S. Burchard, whose right to practice as an attorney is now in controversy as a graduate of the Columbia Law School, applied for admission at the May term of this court held in the first department. The application was made under the authority of chapter 202 of the Laws of 1860, and chapter 25 of the Laws of 1881. It appeared, in support of his application for admission, that he had been graduated under the authority of the college, but upon evidence taken for

the purpose of ascertaining whether he was in fact entitled to admission it appeared that he had not been in attendance upon the law school for the term of eighteen months, and for that reason, after a hearing on which one of his present counsel and a professor in the school was heard in his behalf, the application was rejected. In the month of September following a similar application was made in behalf of one of the graduates of the same class to the General Term in Brooklyn, and it was then favorably acted upon and the applicant was admitted and formally licensed. Under that determination Burchard subsequently applied to the same General Term, and was in like manner successful. At both of these periods of time he was a resident of the first department, and by the rules adopted by the Court of Appeals, under the authority of chapter 486 of the Laws of 1871, and chapter 260 of the Laws of 1872, he was required to make his application only to the General Term of the first department, if those rules were applicable to him; and because he did not obtain his license from that tribunal this proceeding has been taken for its revocation.

It was very clearly irregular in any view for him to apply as he did to another co-ordinate tribunal for his admission after his application had been denied by the court in the first department. Such a proceeding is subversive of all regularity in the administration of the laws, and it has a direct tendency to bring the authority of courts of justice into discredit. But it is evident from the papers that the responsibility for this irregularity in no manner rests upon Burchard. He simply availed himself of the decision made in favor of another person in obtaining his license. This, as well as the application of that other person, was made at the instance and suggestion of the professors in the school, and the responsibility for it must accordingly rest upon them, who certainly would be unwilling to bring their institution into discredit by advising their graduates to adopt a similar course in the ordinary practice of their profession. It has been urged by way of excuse that a change was made in the circumstances upon which the second application was presented, but this position is more specious than real, for no additional term of study was shown to extend beyond that which appeared by the papers presented to the General Term of the first department. The case was accordingly the same, in substance, as it was when the first

application was considered and rejected, because the term of study required by the act of 1860 had not then been completed. But still if the application for admission could lawfully be made to the court in the second department, it follows from that circumstance that it had jurisdiction over the subject-matter, and the order made by it could not afterwards be assailed collaterally or the license issued under it be in that manner revoked.

It has been urged that this present proceeding has not been regularly brought to the attention of the court, and also, if it had been, that the right of the party proceeded against to his office could not properly be brought in question in this manner. But, inasmuch as the party is now professedly practicing as an attorney in the first department, his right to do so is the subject of inquiry and examination by this court, and if he has obtained his license without the authority of law it may be revoked by a summary proceeding of this character, for the courts are authorized by such a proceeding to exercise supervision over and regulate the conduct of persons professing to act as its officers. The power to admit them to practice is certainly broad enough to include that of the revocation of the license, when that may have been obtained without the authority of law. And it is not necessary that this subject should be brought to the notice of the court by a party injuriously affected, but that may be done by any person who can supply the information necessary to justify proper action in the case.

Although attorneys have been classified with the judicial officers of the State it does not follow from that circumstance that they themselves are officers of the State. The provision which has been referred to in support of the point that they are officers of the State and entitled to have their right to their offices tried by a legal action in the ordinary way does not sustain it, for it simply provides for the admission of counselors, solicitors and attorneys by the several courts of law or equity in the State. (1 R. S. [5th ed.], 381.)

There is nothing in this provision by which the proposition can be maintained that, when admitted to practice, the attorney becomes an officer of the State, and if there were, it would have been in conflict with the Constitution which was adopted in 1846. For while that entitled any male citizen of twenty-one years of age, of good moral character, who possessed the requisite qualifications of

learning and ability, to admission to practice, the judges of the court were at the same time denied the power of appointment to public office. (Const. 1846, art. 6, § 8.)

And this provision, therefore, very clearly contemplated that the admission of a person to practice as an attorney, etc., was not the appointment of him to a public office. The correctness of this conclusion has been further evinced by the act of 1847, in which attorneys, etc., are referred to as officers of the courts. (1 R. S. [5th ed.], 401, § 86.)

And that is conformable to the rule of the English courts, under which attorneys are made officers of the respective courts to which they are admitted. (3 Black. Com., 26.)

And no different view was taken of the office in *Seymour* v. *Ellison* (2 Cow., 13), where it was considered that an attorney held an office, or public trust, within the meaning of those terms, as they were then contained in the Constitution of the State. The view of the Chancellor in the case of Wood, a report of which has been added by way of a note, was clearly opposed to the position now taken for the purpose of resisting this proceeding. (Id., 29.)

In *Hamilton* v. *Wright* (37 N. Y., 502), it was stated by WOOD-RUFF, J., that attorneys receiving their authority from the court were deemed its officers. (Id., 503.) And the point was in like manner disposed of in the case of *Ex parte Garland* (4 Wall, 333, 378). Under this state of the law there can be, therefore, no room for doubt but that an attorney is merely an officer of the courts in which he may be entitled to practice, and for that reason subject to their jurisdiction over him through the means of a summary application. And if a person, professing to practice as such, has received a license in contravention of the authority of the law, this jurisdiction is broad enough to supply the power of revoking and taking it away from him, without resorting to the formality of a legal action.

At the time when the first application was made by Burchard for admission, the rules adopted by the Court of Appeals had been sanctioned by legislative action, and even though they might have been broader than the law under which they were adopted had authorized its power to be exercised, which, however, is not considered to be a view warranted by the antecedent provisions of the

statute, they had become so fixed and established by succeeding legislation, as to place their authority beyond the reach of doubt or question. (Laws 1876 [vol. 2, ch. 448], §§ 56, 57; Code Civ. Proc., §§ 56, 57.)

The controlling point, therefore, to be considered is whether this applicant for admission was subject to the restrictions provided by these rules of the Court of Appeals. If he was, then, as he was and still is a resident of the first department, the General Term of that department had exclusive authority to hear and determine his application, and a subsequent renewal of it before the General Term of another department would be entirely unauthorized and its action consequently without jurisdiction. But if the court in the second department was invested with the authority to hear and determine the application, then the fact that it was merely irregular because of the previous hearing and adverse determination of the court in the first department, or the act under which that determination was made was erroneously construed, will not allow the irregularity or the error to be corrected upon the present application. If that court had jurisdiction then its decision as to the right under the law is conclusive, subject only to its reversal by a proper appeal. And whether that power existed or not must be determined by the laws which have been rendered applicable to the admission of such a graduate to practice. The diploma of the law school was legal evidence of the facts that he possessed the requisite learning and ability. (*Matter of Cooper*, 22 N. Y., 67, 88, 89.)

He was not, therefore, a person who could be subjected to an examination upon those subjects under the rules or practice of the court. The action of the authorities of the school itself was rendered sufficient to prevent that, provided the necessary period of attendance had been made to appear in the case. When chapter 486 of the Laws of 1871, under which the rules of the Court of Appeals were adopted, was enacted it was declared in it that it should not be taken or construed " to affect the provisions of chapter 202 of the Laws of 1860, vesting the Columbia Law School with its authority to issue such a diploma." And this restraint was afterwards enlarged so as to include other law schools in the State as well as the two mentioned in the act of 1860. (Laws 1871 [vol. 1], 1016, ch. 486, § 3; Laws 1872 [vol. 1], 671, ch. 260.) Under these restraining provisions

the act authorizing the Court of Appeals to prescribe rules regulating the admission of persons as attorneys, solicitors and counselors had no application to the graduates of the law school of Columbia College. And as the act was so carefully guarded and restricted in this respect it follows from that circumstance that the rules adopted and established under the authority of its provisions must also, in like manner, be inapplicable to these graduates, for otherwise they would not be unaffected by the act itself as it was declared they should be. As to such graduates, therefore, the rules adopted by the Court of Appeals were not applicable and they could not consequently be restricted by force of them in their applications for admission to the General Term of the department in which they resided, as those rules in terms restrained other applicants who were subject to their control.

Before the adoption of the rules authorized by the act of 1871, the Supreme Court had, by its own rules, required applicants for admission to practice to make their application in the district in which they respectively resided. (Rule 2 of the rules of 1849, 52, 54.)

And this rule was continued in force until the time when the rules of the Court of Appeals were adopted under the act of 1871, but after that the preceding rule of the Supreme Court upon the subject was taken to have been, as it clearly was, superseded, and it was then required that the applicant should only comply with what was prescribed by the rules of the Court of Appeals. And in making that requirement, it was so limited in language as to be applicable only to those persons who were applicants for examination. (Rule 2 of 1875, and Rule 1 of 1881.)

There was no rule of court in existence, therefore, at the time Burchard made his application, which required him as a graduate of this law school, to restrict it to the General Term of the department in which he was a resident. For by force of the exception contained in the statute, as it was amended, under which the rules of the Court of Appeals were established, they were inapplicable to the graduates of this law school, and the rule of the Supreme Court in force at the time when Burchard made his first and second application for admission, was so framed as to include only the persons who should be applicants for examination. He was

not such an applicant, but applied for his admission without examination and upon the authority of his diploma.

By chapter 417 of the Laws of 1877, chapter 202 of the Laws of 1860, was in terms repealed. (Laws, 1877 [vol. 1], 473, § 1, sub. 34.) But by subdivision 17 of section 3 of this act, the right of a graduate of this and other law schools, to be admitted upon the production of his diploma, when that right became vested, on or before the 1st of April, 1876, was allowed to be made the foundation of a successful application for admission at any time within one year after this act took effect, upon his complying with the existing laws relating to the admission of such a graduate to practice. And this phrase "existing laws," was declared to designate the statutes of this State remaining unrepealed on the day before the act containing it went into effect. (Id., 477, § 4.) This act took effect on the 1st day of September, 1877, and consequently a graduate of this law school had the right to be admitted within one year after that time, upon complying with the laws as they were in force on the last day of August, 1877. The exception so inserted in the act was made dependent only upon existing laws, and the latter term as it was so used from its ordinary and well-known signification included only such laws as had been enacted by the legislature. A term of similar import was so construed in the unreported case of *Atrill* v. *Rockaway Beach Company*, and as it was employed in this act, it could not be so extended, by construction, as to include the rules of the courts, which cannot be properly designated as laws, even if any were in force which were applicable to a graduate of this school. As this exception was made to the repealing authority of the act of 1877, the application of such a graduate was subordinated only to the statutory laws of the State, and under those laws the application for admission was required to be made at a General Term of the Supreme Court. (1 R. S. [5th ed.], 400, § 80.)

This provision of the statute did not restrict the applicant, in making his application, to the General Term of the district in which he should reside, but the authority was general, subject only to the qualification that the application must be made to a General Term of the court. And when the District General Terms were abrogated under the authority of the amendments to the Constitution, and the

organization of the Departmental General Terms was provided for, all the laws relating to the General Terms, as they had been previously organized within the several judicial districts, were made applicable to the newly-formed courts so far as they were appropriate to that end. (Laws 1870, chap. 408, § 5.) And as the preceding statute already referred to was an appropriate act of legislation for the newly-organized courts, it was extended and applied to them by force of this provision contained in the acts of 1870. And these were the only existing laws which a graduate of this law school was obliged to comply with under the language of the exception already mentioned and incorporated in the act of 1877. Such a graduate was by statute exempt from the operation of the rules of the Court of Appeals, and he was neither in terms nor by implication rendered subject to the rule of the Supreme Court, for it extended only to such persons as were applicants for examination. He was accordingly at liberty to apply for his admission to the General Term of either one of the departments in the State. And since the time of the enactment of these exceptions it has been continued by other statutes, annually passed, so as to secure the like privilege to all the graduates of this school becoming entitled to admission on or before the 1st of October 1881. The last act upon this subject is chapter 25 of the Laws of 1881, and under its authority the applicant was entitled to the same privilege of admission as was secured to the person graduated by this school on or before the 1st of April, 1876, by the act of 1877, and that was sufficient to authorize the General Term of the second department to hear and determine his application for admission. It was a court of co-ordinate jurisdiction, and as such, under the statutes of the State in force at the time and applicable to this subject, it had the authority to hear and determine the application made for the admission of Burchard.

That authority, as it had been created by the laws of the State in force on the last day of August, 1877, and was afterwards extended by succeeding legislation to include the class of which he was a member, vested the General Term to which he last applied with jurisdiction over his application and over himself by the fact of his making it. And while it may have been indecorous in that tribunal to have entertained it, with the knowledge of what had

transpired in the disposition of a similar application made in his behalf to the General Term in the first department, it was not deprived of its authority over the case by that circumstance.

The policy of these several enactments by which the exception contained in the act of 1877 has been from time to time repeated, and in that manner brought down to the period in controversy, is certainly very questionable. For this legislation has manifestly been enacted to favor the fortunate class of persons who may be able to secure admission to the legal profession through the easy avenues of the law school, while those who are no so prosperously situated are required to pass their three years of laborious preparation in the office of a practicing attorney. The discrimination is neither just nor fair, and the restraints, other than those in force before the passage of the act of 1871, should be removed from all alike, or all should uniformly be subjected to the control of the rules of the Court of Appeals. Discriminations of th s nature are not in harmony with the policy of the law, or the institutions of the State. They create invidious distinctions, and are justly liable to be regarded as harsh and uncharitable to pe sons who are incapable of availing themselves of the privileges secured by such laws. Upon a preceding occasion this subject was presented to this court for its consideration, and in order to avoid the force of the objection which prevented the success of the application made by Burchard to the General Term of the first department, the distinguished professor of this school pledged himself in writing to "make no further application to the legislature for special legislation in favor of our graduates, so as to exempt them from the application of general laws governing the admission o: attorneys or counselors, but shall, on the other hand, discountenance such legislation."

This assurance was given in a letter of the date of May 20, 1879, and in reliance upon it the graduates, who were then applicants for admission, were accorded that admission. But notwithstanding this fact the law, which has been the subject of consideration, has been repeated, through the enactments of the two succeeding legislatures. It is true that the learned professor has disclaimed all action upon his part tending to the production of such a result, but if the spirit of this assurance had been observed, and such legislation had been actually discountenanced by the school authorities, it is diffi-

cult to discover how such enactments could have secured the sanction of the legislature. Still, however, even if they have resulted from a failure to observe and carry out this assurance, they are nevertheless the laws of this State, and it is the duty of this court to observe and carry into effect their requirements. The result of that obligation is, that the action which has been taken by the General Term of the second department in favor of Burchard cannot be set aside or disregarded.

It was the determination of the court having jurisdiction over the party and the subject-matter, and although it was inconsistent with the decision made by this court upon the same facts, it is still entitled to be maintained. The license issued to Burchard cannot be revoked or set aside by this court, and the application now made n ist accordingly be denied.

BRADY, J., concurred; DAVIS, P. J., taking no part.

Application denied.