HENNIG v. SMITH et ux.

(Supreme Court, Equity Term, Erie County.    January 28, 1915.)

1. VENDOR AND PURCHASER (§ 130*) — MARKETABLE TITLE — LOCATION OF BOUNDARIES.

A contract called for the conveyance of 49½ feet of land on the west side of W. avenue, by 93 feet deep, commencing at the intersection of the west line of W. avenue with the north line of lot 68 of the A. S. survey and subdivision. There were dwellings on the lot, and a survey showed that the northerly of the two buildings at its northeast corner projected over the lot line 3 inches, and the eaves a foot or more, and that the eaves of the southerly house extended over the south line of the 49½-foot lot some distance. Held, that a vendor, though having adverse possession, could not convey a "marketable title," and was therefore not entitled to specific performance.

[Ed. Note.—For other cases, see Vendor and Purchaser, Cent. Dig. §§ 245, 246, 247; Dec. Dig. § 130.*]

2. SPECIFIC PERFORMANCE (§ 117*)—ISSUES AND PROOF.

Where a vendor contracted to furnish a guaranteed abstract of title and certificate showing a marketable title, and the survey on its face showed that the buildings extended over the lot line, a general denial of plaintiff's allegations that he had complied with all the conditions of the agreement raised an issue sufficient to permit defendant to stand on such objection to the title offered.

[Ed. Note.—For other cases, see Specific Performance, Cent. Dig. § 209; Dec. Dig. § 117.*]

3. VENDOR AND PURCHASER (§ 130*)—"MARKETABLE TITLE."

A "marketable title" is one which it is reasonably certain will not be called in question in the future.

[Ed. Note.—For other cases, see Vendor and Purchaser, Cent. Dig. §§ 245, 246, 247; Dec. Dig. § 130.*

For other definitions, see Words and Phrases, First and Second Series, Marketable Title.]

4. VENDOR AND PURCHASER (§ 130*)—MARKETABLE TITLE—ADVERSE POSSESSION.

Where a vendor contracted to furnish an abstract of title and certificate showing good marketable title, he was bound to furnish a title marketable on the abstract, and not merely by way of adverse possession.

[Ed. Note.—For other cases, see Vendor and Purchaser, Cent. Dig. §§ 245, 246, 247; Dec. Dig. § 130.*]

5. VENDOR AND PURCHASER (§ 143*)—PERFECTED TITLE—OBJECTIONS—WAIVER.

The rule that, where a vendee on the last day makes specific objections to the title which are unfounded, he cannot thereafter raise a new objection, even if valid, does not apply to objections which cannot be obviated.

[Ed. Note.—For other cases, see Vendor and Purchaser, Cent. Dig. §§ 267–270, 311; Dec. Dig. § 143.*]

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

**6. CHAMPERTY AND MAINTENANCE (§ 7*)—VOID DEED—GRANTEE NOT IN POSSESSION—RIGHT TO OBJECT.**

Real Property Law (Consol. Laws, c. 50) § 260, provides that a grant is void if at the time of delivery the property is in actual possession of a third person, claiming under a title adverse to the grantor. *Held*, that such a conveyance is good as between the parties to the deed, though void as against the party in possession.

[Ed. Note.—For other cases, see Champerty and Maintenance, Cent. Dig. §§ 54–110; Dec. Dig. § 7.*]

Suit for specific performance of a contract for the sale of real property by Sadie G. Hennig against Charles A. Smith and wife. Decree for defendant.

Lincoln A. Groat, of Buffalo, for plaintiff.
William R. Daniels, of Buffalo, for defendants.

WHEELER, J. [1] The contract calls for the conveyance of 49½ feet of land on the west side of West avenue, by 93 feet in depth, commencing at the intersection of said west line of West avenue with the north line of lot 68 of the Appollos Stevens survey and subdivision. There are two dwellings standing on the lot described, and the survey made by Mr. William J. White shows that, according to his location of the line of lot 68, the northerly of the two dwellings, at its northeast corner, projects over the lot line 3 inches, and the eaves to the house about a foot more. According to the same survey, the eaves of the southerly house extend over the south line of the 49½-foot lot some distance, the exact distance does not appear.

From the evidence it appears that there are no monuments establishing the exact location of the lines of lot 68, and the location is a matter of dispute. However, if it should be established to the north of the point claimed for it by Mr. White, the surveyor, so as to bring the northerly of the two houses entirely on lot 68, then the southerly line of the premises owned by the plaintiff would be moved just so much further north, and throw the southerly house still more over the true line of description. In other words, in whatever way we may take it, the two houses cannot be made to stand wholly on a lot having a frontage of 49½ feet; either one or the other, or both, must have been erected over the line or lines, depending on where the north line of lot 68 is located. It will be observed that the doctrine of practical location of disputed boundaries does not help out the situation.

It is urged that, notwithstanding, the plaintiff has by the evidence given on the trial established an adverse possession to the property on which the houses stand, and her title by reason thereof cannot be disturbed. Assuming this to be true, the court is still bound by the fact that by neither the contract nor the deed tendered does the description fully cover the ground actually occupied by the buildings.

It is urged by the plaintiff that while the defendant, by answer, alleged the defense that the plaintiff was and is unable to tender a marketable title, and in that connection set up certain alleged defects in the title claimed to render it unmarketable, she did not specifically, by her answer, raise the objection now under discussion as to the buildings not standing on the property described, and therefore cannot

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

avail herself of such defects, for want of proper pleading. The complaint sets forth in full the contract between the parties, and alleges the plaintiff has duly performed all the terms and conditions of the agreement. This allegation is denied by the defendant.

[2] It is incumbent on the plaintiff, before she is entitled to a specific performance, to make out a prima facie case. One of the provisions of the agreement is that the plaintiff should furnish "a guaranteed abstract of title and survey showing good and marketable title to said premises." The survey furnished by the plaintiff, on its very face, showed the buildings over the lines as above stated. It seems to me that the general denial that plaintiff had complied with all the terms and conditions of the agreement raised an issue sufficient to permit the defendant to stand on the objection to the title made.

[3] We are, moreover, of the opinion that this defect renders the title unmarketable in law and in fact. To make a title marketable, it must be such as to make it reasonably certain that it will not be called in question in the future. Fleming v. Burnham, 100 N. Y. 1, 2 N. E. 905; Methodist Episcopal Church Home v. Thompson, 108 N. Y. 618, 15 N. E. 193; Kursheedt v. Union Dime Savings Institution, 118 N. Y. 358, 23 N. E. 473, 7 L. R. A. 229; Todd v. Same, 128 N. Y. 636, 28 N. E. 504; McPherson v. Schade, 149 N. Y. 16, 43 N. E. 527. The contract was to purchase the premises known as 1060 and 1062 West avenue, describing the premises by metes and bounds under the description by which the plaintiff took title by prior conveyances. When it is made to appear that the houses do not stand wholly on the premises described, we do not think it can be said the title is marketable. Even though the plaintiff were able to tender a deed containing an amended description, with sufficient frontage so as to bring the dwellings entirely within its bounds, still the title would in part at least, rest on adverse possession. In this case the contract was to give a "sufficient warranty deed of the premises with a guaranteed abstract of title and survey showing good and marketable title."

[4] It is undoubtedly true that title by adverse possession may be deemed under proper proof and circumstances a marketable title. Shriver v. Shriver, 86 N. Y. 575; Simis v. McElroy, 160 N. Y. 156, 54 N. E. 674, 73 Am. St. Rep. 673. This rule is, however, subject to certain limitations which it is not necessary here to discuss. In this case, however, the contract is for an abstract of title and survey "showing good and marketable title." It requires that the title to the premises in the survey should appear marketable on the abstract, not by way of adverse possession. In other words, the record title must appear to be good, and if it appears the plaintiff has no record title according to the survey the plaintiff has not met the conditions of the contract. We think that title by adverse possession does not fulfill the contract between the parties.

[5] It is urged by the plaintiff that the benefit of the objection to the title is not now available to the defendant, because it was not raised at the time the title was originally rejected; the rejection being based on other grounds. It is undoubtedly the law that where one, on the last day, makes specific objections to the title, which are unfounded, he cannot subsequently raise a new objection, even if valid, where it is

one that could have been obviated. Higgins v. Eagleston, 155 N. Y. 472, 50 N. E. 287; Benson v. Cromwell, 6 Abb. Prac. 83–85. The defect, however, in the plaintiff's title, is of such a character that it cannot be obviated, and we are of the opinion it does not fall within the doctrine invoked.

[6] It is urged, further, by the defendant that by the record it appears that there is an outstanding interest in the heirs of Mary Catherine Sewell, wife of Henry D. Sewell. Mary Catherine Sewell died leaving a last will and testament. By it she gave her husband a life estate in all her property, both real and personal, and gave all the rest, residue, and remainder to her children in equal shares. Henry Sewell, the husband, died, and by his will attempted to give his executors power to sell and dispose of the estate left by his wife. This he had no authority to do. Nevertheless his executors, on August 9, 1849, did by deed undertake to convey to one Morgan G. Lewis the premises in question and others. In 1896 quitclaim deeds purporting to have been executed by the surviving heirs and devisees of Mary Catherine Sewell, deceased, to Samuel Corben, were placed on record, and on August 17, 1897, Corben gave a deed of said premises to one Lydia Wallon Bommer. On September 19, 1913, Lydia Wallon Bommer gave a deed of the premises in question to the plaintiff.

It is contended by the defendant that, inasmuch as the plaintiff was in actual possession of the property in question at the time of the giving of the deeds to Corben, and from Corben to Bommer, and from Bommer to the plaintiff, that by virtue of the provisions of section 260 of the Real Property Law, these deeds are void, and operated to convey no interest in the realty in question. This section reads:

"A grant of real property is absolutely void * * * if at the time of the delivery thereof, such property is in actual possession of a person claiming under a title adverse to that of the grantor."

This section of the Real Property Law has been the subject of judicial interpretation, and it is held that while a conveyance or grant to one out of possession is void as against the party in possession, claiming adversely, nevertheless the conveyance is good as between the parties to the deed. Poor v. Horton, 15 Barb. 485; Livingston v. Proseus, 2 Hill, 526; Hamilton v. Wright, 37 N. Y. 502; Newton v. Kruse, 161 App. Div. 819, 147 N. Y. Supp. 1061; Dever v. Hagerty, 169 N. Y. 484, 62 N. E. 586.

Such being the construction of the statute, it is manifest that, if the deeds from the Sewell heirs to Corben and from Corben to Mrs. Bommer are good as to them, then a conveyance from Mrs. Bommer to the plaintiff, who was in possession, would operate to cure the defects insisted upon. No one but Mrs. Hennig, the grantee, could question the validity of the deeds to Corben or to Mrs. Bommer. We therefore hold that this defense does not avail the defendant.

On the first ground, however, we think the defendant entitled to a dismissal of the complaint, but without costs to either party. The defendant, however, is entitled to recover the cash payment made on the contract set up in the answer by way of counterclaim.

So ordered.